636 P.2d 1214

STATE of Arizona, Appellee,

v.

James Henry THOMAS, Appellant.

No. 5228.

Supreme Court of Arizona,
En Banc.

Nov. 6, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Appellant James Henry Thomas was convicted of sexual abuse and sexual conduct with a minor following a trial by jury. We have jurisdiction of his appeal pursuant to 17A A.R.S. Rules of Supreme Court, rule 47(e)(5).

The pertinent facts are as follows. The victim, a 14-year-old female, related at trial that appellant touched and rubbed her breasts and genital areas while she was at appellant's apartment. For several hours prior to the incident, the victim had been at appellant's apartment performing house-cleaning chores for her cousin, appellant's girlfriend and cohabitant. During the commission of the offenses, appellant unzipped his pants but the victim could not recall what occurred next. At trial, the victim described this as a "mental blockage." The only recollection the victim had was when she regained consciousness and observed appellant zipping up his pants. At that time, the victim felt a wet substance on her legs which she believed was semen. Several days later, the incident was reported to police.

Appellant testified and denied any wrongdoing. He expressed the belief that the victim's grandmother concocted the accusations for the purpose of interfering with his relationship with the victim's cousin.

Six arguments are raised on appeal. Because we reverse appellant's conviction and remand for a new trial, we will address only those issues which may arise on retrial.

Appellant contends that the trial court committed reversible error by failing to grant appellant's motion for a mistrial. During the opening statement to the jury, the prosecutor, in referring to the memory lapse suffered by the victim, stated:

"Try as she might and try as we might, we simply cannot get Cheryl to remember exactly what happened immediately after the pants were unzipped. *We have determined that this is somewhat of a mental block* and have since stopped pursuing it, and we try to let the girl live with that as it is." (Emphasis added).

Appellant maintains the "mental block" comment was improper in that it brought to the jury's attention facts which were never established during the trial. No psychiatric, medical or other expert testimony was introduced to substantiate this statement which implied there had been an expert "determination" that a "mental block" existed. The only evidence presented was the victim's own testimony in which she described her memory loss as a "mental blockage."

■ "The opening statement should not contain any facts which the prosecutor cannot prove at trial." *State v. Bowie*, 119 Ariz. 336, 339, 580 P.2d 1190, 1193 (1978). Although we agree with appellant that the prosecutor's comments overstated the actual proof available, the comments did not constitute reversible error. The prosecutor reminded the jury that the opening statement was not evidence. Also, what transpired during the "mental blockage" was not crucial in establishing appellant's guilt. The victim was able to testify that appellant touched her breasts and inserted his finger into her vagina. This testimony was sufficient to establish the elements of the charged offenses. We cannot say that under these circumstances the verdict might have been different had the prosecutor not made the "mental block" remarks.

Appellant also challenges the admissibility of testimony concerning the victim. Over defense counsel's objections, several witnesses acquainted with the victim were allowed to testify that the victim experienced marked personality changes after the incident. They were permitted to express the opinion that "something pretty serious" happened to the victim on the date of the offenses. Appellant maintains the testimony was irrelevant and was an improper attempt to bolster the victim's credibility as a witness.

■ Initially, we observe that any evidence which substantiates the credibility of a prosecuting witness on the question of guilt is relevant and material. *State v. Mosley*, 119 Ariz. 393, 401, 581 P.2d 238, 246 (1978). Whether this type of evidence is admissible depends on whether it may come in under a particular rule of evidence. A similar issue was addressed by the Court of Appeals in *State v. Peeler*, 126 Ariz. 254, 614 P.2d 335 (App.1980). In *Peeler*, the court held that the trial court did not err when it admitted the opinion of a police officer concerning a sexual assault victim's mental condition, responsiveness and competence after the assault. Such testimony was found admissible under 17A A.R.S. Rules of Evidence, rule 701. The Court of Appeals viewed the officer's testimony as proper since it was rationally based on the officer's perception of the victim's conduct. *Id.* at 257, 614 P.2d at 338. Although *Peeler* differs factually from the instant case, we believe it supports the position that such evidence is admissible, and we so hold.

As a separate argument, appellant claims the trial court committed reversible error when it denied appellant's motion for mistrial based upon a portion of the prosecutor's opening statement which referred to the victim as a unique and special child who was very religious and dressed differently than other children her age. Appellant objects to the religious reference and the relevancy of the uniqueness comments. Although we find nothing particularly prejudicial about the uniqueness references, the religious references must undergo closer scrutiny.

Appellant maintains that fundamental error occurred when the trial court permitted various references to the effect that the

victim and her grandmother were religious people. The religious references were made during the prosecutor's opening statement, during the direct examination of the victim and during the prosecutor's closing statement.

In his opening statement, the prosecutor made the following comments:

"Let me turn briefly to the anticipated evidence from Cheryl Daniel, the victim. It will become relatively obvious from the beginning that Cheryl Daniel is a rather unique child in this particular case. She was raised from a very early age by her grandmother, a *grandmother who is terribly religious*, terribly strict, and, of course, as one might expect, *all of this rubbed off on Cheryl. . . . She is a very religious girl*, and she will tell you some of the specifics on how *grandmother's attitudes and beliefs have rubbed off on her.*" (Emphasis added).

On direct examination, the prosecutor elicited the following testimony:

"Q. BY MR. GOLDEN: Before the interruption, Cheryl, we were speaking about your grandmother who had raised you since the age of one year old. You began to tell us a little bit about grandma. Would you continue at that.

"A. Well, *she's very religious and kind of strict.*

"Q. Did she pass on these kind of—her personality on to you somewhat?

"A. Yes.

"Q. And would you say that *you've been raised in a pretty strict moralistic type of way?*

"A. Yes.

"Q. *And are you fairly religious?*

"A. Yes.

"Q. *How often is it that you go to church?*

"A. Almost every Sunday." (Emphasis added).

In his closing argument, the prosecutor stated:

"The ultimate issue, I guess, is as Mr. Mesh framed it, one of credibility. Who are we going to believe in this case? Do we believe Cheryl, who told us of no less than eight various acts, or do we believe the defendant, who denies everything, 'I didn't do a thing.' Who to believe? Therein lies the real issue.

\* \* \* \* \* \*

"I suggest to you that a better indicator as to who to believe in this particular case is the inherent believability of one story or the other. Who to believe. I would suggest to you Cheryl's the only one to believe. Let's take the defendant first. In order to believe his story, and not accept Cheryl's version of the facts, what would you have to do? You would have to label Cheryl a liar. . . . You would have to believe that the grandmother, Cheryl and Lisa, *uprighteous, religious, moralistic type people*, all got together and cocked [sic] up a scheme, a scheme that involves almost criminal activity, to have Mr. Thomas suffer a conviction." (Emphasis added).

The sole objection made by defense counsel occurred during the direct examination of the victim at which time counsel objected to the materiality of any testimony concerning the victim's grandmother. This objection was overruled.

It is well established that failure to object to evidence, testimony or arguments waives these matters on appeal. *See, e.g., State v. Wilson,* 113 Ariz. 308, 533 P.2d 235 (1976). Additionally, a party must state distinctly the matter to which he objects and the grounds of his objections. *State v. Baca,* 102 Ariz. 83, 425 P.2d 108 (1967); 17A A.R.S. Rules of Evidence, rule 103(a)(1). By failing to make a timely, specific objection to the prosecutor's remarks or the victim's testimony, appellant has waived these issues on appeal absent a finding of fundamental error.

Fundamental error has been variously defined by this court as "such error as goes to the foundation of the case or takes from the defendant a right essential to his defense," *State v. Gamble,* 111 Ariz. 25, 26, 523 P.2d 53, 54 (1974) and as "error of such dimensions that it cannot be said it is possi-

ble for a defendant to have had a fair trial." *State v. Smith*, 114 Ariz. 415, 420, 561 P.2d 739, 744 (1977). Before a finding of fundamental error can be made, it must be apparent that error was committed by the trial court in some aspect of the proceedings. If it is determined that error occurred, the prejudicial nature of the unobjected-to error must be evaluated in light of the entire record. *State v. Pulliam*, 87 Ariz. 216, 349 P.2d 781 (1966), *rev. on other grounds, State v. Cobb*, 115 Ariz. 484, 566 P.2d 285 (1977). If there is substantial evidence in the record to support the verdict and it can be said that the error did not, beyond a reasonable doubt, contribute significantly to the verdict, reversal is not required. If, however, it appears that the error did contribute to or significantly affect the verdict, fundamental error was committed and reversal is mandated on due process grounds, *i.e.*, "it cannot be said it is possible for a defendant to have had a fair trial." *State v. Smith, supra.*[1]

17A A.R.S. Rules of Evidence, rule 610, and Ariz.Const. art. 2, § 12, state, in pertinent part:

Rule 610: Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature his credibility is impaired or enhanced.

Art. 2, § 12: [N]or shall any person be incompetent as a witness or juror in consequence of his opinion on matters of religion, *nor be questioned touching his religious belief in any court of justice to affect the weight of his testimony.* (Emphasis added).

With respect to the constitutional provision, this court has stated Article 2, § 12 "is a direct prohibition against questioning any witness as to his religious belief, for the purpose of affecting his credibility. The language is positive and explicit." *Tucker v. Reil*, 51 Ariz. 357, 363, 77 P.2d 203, 205 (1938). In *Tucker*, the court found the questioning of witnesses as to their religious faith to constitute reversible error.

More recently, in *State v. Marvin*, 124 Ariz. 555, 606 P.2d 406 (1980), we upheld a trial court ruling which excluded any testimony concerning the defendant's Mormon beliefs. We said:

"The testimony concerning religious beliefs was intended to bolster appellant's credibility .... Since the state cannot assail a witness' credibility because of his religious beliefs or lack thereof, *neither may a witness seek to enhance his testimony in reliance thereon.*" (Emphasis added).

*Id.* at 558, 606 P.2d at 409. Taken together, Article 2, § 12, and Rule 610 express a strong public policy against injecting religious beliefs into a judicial proceeding. Reasons for exclusion of religious beliefs or opinions for purposes of affecting a witness' veracity rest on grounds of relevancy, possible prejudice and constitutional considerations. *Weinstein & Berger, 3 Weinstein's Evidence,* ¶ 610[01], 610–2 (1981). We believe that strict adherence to these proscriptions becomes even more compelling in the context of a criminal proceeding, where the question of guilt or innocence is balanced upon the credibility of the prosecuting witness. Thus, there can be no question that error occurred when the various religious references were made during the course of appellant's trial. Can it be said, however, that this unobjected-to error was so serious that it deprived appellant of a fair trial?

A review of the record leads us to conclude, as was emphasized by the prosecutor, that the credibility of the victim as a witness was the crucial, determinative factor in this case. The victim's testimony stood alone as evidence establishing the appellant's guilt. The State's case suffered an immediate setback when the State's first witness, the physician who examined the victim after the incident, was unable to testify that there had been any manual contact with the victim's genitals:

*State v. Shing*, 109 Ariz. 361, 509 P.2d 698 (1973).

---

1. Under this analysis, "fundamental error" cannot be labeled "harmless error." *But see State v. Anderson*, 110 Ariz. 238, 517 P.2d 508 (1973);

"Q. Let me ask you this, Doctor, and it's a rather long question, so bear me out for a minute. Are your findings of an inflamed intact hymen and a very tender vulva consistent with the occurrence two days earlier of a finger or penis penetrating the vulva and irritating but not breaking the hymen?

"A. No.

"Q. If I might repeat that. Are your findings of an inflamed intact hymen and a very tender vulva consistent with the occurrence two days earlier of a finger or penis penetrating the vulva and irritating but not breaking the hymen?

"A. No.

"Q. . . .

"[W]e know that your findings were that the hymen was inflamed, that that hymen was intact.

"We have your further finding that the area surrounding the vagina and the hymen or the vulva, the labia, the outer covering, was very tender.

"Knowing all of those findings, do you feel that it is possible that those findings are consistent with the fact that two days earlier there was, for instance, manual masturbatory contact with the vulva?

"A. I can't say honestly that there was, no."

Testimony by the victim's cousin, Lisa Daniel, who was also present at the apartment, conflicted with both the victim's and the defendant's testimony. The State's case, therefore, depended heavily upon the victim's testimony and the "personality change" and "something pretty serious happened" testimony. As a result, the prosecutor resorted to bolstering the credibility of the victim's testimony by making repeated and deliberate references to the religious nature of the victim and her grandmother. Under these circumstances, it is highly probable that the religious references improperly influenced the jury and contributed to the verdict. As the Michigan Court of Appeals stated in a similar case:

"In essence it appears the prosecutor was attempting to convey to the jury that complainant was more worthy of belief than defendant because she attended church, knew what it was to take an oath and respected that oath because of her church attendance. Hence, implicit in the questions and answers was a conveyance to the jury that complainant had certain religious beliefs and because of such beliefs she knew what it was to tell the truth.

"In a case such as this, when the crucial issue is that of credibility, such questions by a prosecutor put to a complaining witness are unwarranted, prejudicial and constitute reversible error. Nor does defendant's failure to object to such questions save the error."

*People v. Wells,* 82 Mich.App. 543, 544, 267 N.W.2d 448, 449 (1978); *see also People v. Hall,* 391 Mich. 175, 215 N.W.2d 166 (1974). We therefore conclude that admission of these religious references constituted fundamental error requiring reversal and a new trial.

Reversed and remanded.

STRUCKMEYER, C. J., and GORDON, J., concur.

CAMERON, Justice, specially concurring.

I concur in the result, but disagree that fundamental error may not be harmless error. As indicated in the body of the opinion and footnote 1, the harmless error doctrine may be applied to fundamental or constitutional error, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and we have so held. *State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973). I agree, however, that in the instant case the error was both fundamental and harmful.

HOLOHAN, Justice, concurring.

I concur in the result.