**Curtis Lee NELSON,
petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C5–87–213.**

Court of Appeals of Minnesota.

June 30, 1987.

Review Denied Aug. 12, 1987.

David G. Roston, Segal & Roston, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Darrell C. Hill, Asst. Co. Atty., St. Paul, for respondent.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and CRIPPEN, JJ.

## OPINION

FORSBERG, Judge.

Appellant was charged with criminal sexual conduct in the first, third and fourth degree. The complaint was amended immediately prior to trial to include a charge of kidnapping. Appellant was found guilty of criminal sexual conduct in the first degree and kidnapping, and found not guilty of criminal sexual conduct in the third and fourth degree. He later sought post-conviction relief and appeals from the denial of relief. We affirm.

## FACTS

The State presented the following evidence which formed the basis of appellant's conviction: A.H., a part-time employee of appellant, came to St. Paul from Indianapolis, Indiana in September, 1985, to attend the Apostolic Bible Institute, a college associated with the United Pentecostal Church. On November 18, 1985, appellant raped her while threatening to kill her and violently pushing on her legs and pulling her hair. A.H. suffered some soreness after the rape and experienced severe emotional problems, including "crying episodes" and nightmares. She also testified that her spiritual life was affected for two or three months because she found it difficult to pray, believing God had let her down. A.H. felt embarrassed about the

incident and her loss of virginity. She testified that sexual purity is an important value in the Pentecostal church, and all of her girlfriends were virgins.

## ISSUES

1. Did the court's grant of the State's motion to amend the complaint to add a charge of kidnapping the day before the trial deny appellant due process of law?

2. Did the court's admission of testimony regarding the victim's religious background and beliefs deny appellant a fair trial?

3. Was appellant entitled to have his conviction for first degree sexual conduct vacated because it is inconsistent with the jury verdicts acquitting him of third and fourth degree criminal sexual conduct?

## ANALYSIS

Appellant has the burden of proving by a preponderance of the evidence, the facts alleged in his petition for post-conviction relief. Minn.Stat. § 590.04, subd. 3 (1986). *Doan v. State*, 306 Minn. 89, 91, 234 N.W.2d 824, 826 (1975). An appellate court must evaluate whether the evidence is sufficient to support the trial court's post-conviction finding. *State v. Doughman*, 340 N.W.2d 348, 351 (Minn.Ct.App. 1983). A reversal will not occur if the findings are supported by sufficient evidence. *Herme v. State*, 384 N.W.2d 205, 207 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 22, 1986).

1. Appellant argues that he was denied due process because the court permitted the State on the day of trial to amend the complaint to add the charge of kidnapping. We disagree. Appellant wasn't prejudiced since the kidnapping charge arose from the same conduct as the other three offenses for which appellant had been previously charged. *See State v. Stephani*, 369 N.W.2d 540, 549 (Minn.Ct. App.1985), *pet. for rev. denied* (Minn. Aug. 20, 1985). The lack of prejudice is even more evident because appellant rejected the trial court's offer for a continuance to prepare for the *new* charge.

Appellant claimed that the new charge was added because of "vindictiveness," but the trial court found otherwise. There is substantial evidence in the record to support this finding.

2. Appellant also contends he was denied a fair trial by the court's admission of testimony regarding A.H.'s religious background. This testimony, however, was admitted to prove severe mental anguish, an essential element of the crime, not to show credibility of the witness, which would have been a violation of Minn. R.Evid. 610.

3. Appellant claims that since he was acquitted of charges alleging third and fourth degree criminal sexual conduct, but convicted of first degree criminal sexual conduct, these inconsistent verdicts entitle him to a new trial. In *State v. Juelfs*, 270 N.W.2d 873 (Minn.1978), the supreme court stated the following general rule:

> [A] defendant who is found guilty on one count of a two count indictment or complaint is not entitled to a new trial or a dismissal simply because the jury found him not guilty of the other count, even if the guilty and not guilty verdicts may be said to be logically inconsistent.

*Id.* at 873–74. Minnesota law allows a jury in a criminal case to exercise lenity. *State v. Perkins*, 353 N.W.2d 557, 561 (Minn. 1984). Thus, the focus is not upon the inconsistency of the acquittals, but upon whether there is sufficient evidence to sustain the guilty verdict. *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984). The evidence was sufficient to sustain appellant's conviction for criminal sexual conduct in the first degree.

## DECISION

Amendment to the complaint on the day of trial did not deny appellant's right to

due process. Testimony regarding the victim's religious belief was properly admitted to prove mental anguish. Appellant is not entitled to a new trial based on the jury's rendering inconsistent verdicts.

Affirmed.

CRIPPEN, Judge, concurring specially.

This case involves a troublesome issue on the use of evidence to show that the complaining witness was credible because of her character as a religious person. Under the circumstances, I would affirm, but with recognition that the receipt of this evidence in similar cases may be reversible error.

It is a well-established rule of law that a witness's religious beliefs are not admissible to show credibility:

> Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature his credibility is impaired or enhanced.

Minn.R.Evid. 610. Where the credibility question involves the prosecuting witness in a criminal proceeding, it has been properly observed that there should be "strict adherence" to the proscription of this rule. *State v. Thomas*, 130 Ariz., 432, 436, 636 P.2d 1214, 1218 (1981).

Here, over the defense attorney's objection, this exchange occurred in the prosecutor's questioning of the complaining witness:

Q. After you returned to Indianapolis, was your spiritual life affected by this assault?

A. Yes, it was.

   \*     \*     \*     \*     \*     \*

Q. Could you tell the jury how it was affected?

A. In our religion, we pray a lot. And when I went back, it was hard for me to pray because it reminded me of how hard I had prayed, because I really prayed really hard when the assault happened. And even though I know God is good and, you know,

that it wasn't his fault, it still reminded me of that. And I was almost afraid to pray because it reminded me of that. It just shook me up really bad and took me quite a few months to—I'd say about two or three months to really feel like myself to where I could really—you know, I kept praying anyway no matter how I felt, but just, you know—

   \*     \*     \*     \*     \*     \*

Q. After you moved back to Indianapolis, how did you feel about your relation with your God?

A. I felt like God had let me down.

Appellant was accused in one count of "personal injury to the complainant," together with coerced sexual penetration. *See* Minn.Stat. § 609.342, subd. 1(e) (1986). Although there was extensive testimony of harm done to the emotional health of the complainant, independent of her spiritual life, the trial court concluded that evidence on spiritual harm was also admissible because it was relevant to the question of a personal injury.

The significance of the contested testimony of the complainant is enlarged by other evidence in the case. She testified about her church activities as a teenager, her hopes to do missionary work, and her enrollment in a course of study at the Apostolic Bible Institute. She described her religious classes at the institute, her belief in salvation, and her desire to emulate Jesus. One of her current instructors testified as to the teaching of Bible morality at the Apostolic Bible Institute.

Reflecting on the evidence of record, the prosecuting attorney began his final argument with these observations:

> MR. GREGG: Your Honor, Mr. Duckstad, members of the jury, the first thing I want to talk a little bit about today is very significant in this case is the credibility of witnesses, which is your particular province to decide, using your normal common sense that you do in everyday

life to decide whether or not somebody is telling the truth. You judge this by a witness's demeanor and by how they behaved on the stand. Specifically, I want to talk a little in that respect about [the complainant], who is, as you now know, as the evidence shows, a very religious person to whom telling the truth is important.

Following this observation, the prosecutor made additional observations on the credibility of the complaining witness and proceeded to describe her testimony.

The record contains no objection by appellant to the prosecutor's remarks in his final argument. In addition, there is no record of a defense request for an instruction demanding that the jury consider religious evidence solely for determining the question of whether the complaining witness was injured.

Rule 610 is of compelling importance in a criminal trial. It's proscription does not disappear upon demonstration that evidence of the complainant's religious beliefs has some relevance to another issue in the case. In my opinion, if this evidence is to be admitted for other purposes, it is important that there be a proper instruction to the jury on the use of the evidence, and that there be no attempt by the prosecutor to use the evidence to establish credibility. In my opinion, it was error in this case to admit the evidence without a cautionary instruction, and the prosecutor committed serious misconduct in his final argument.

Prior decisions of the Minnesota Supreme Court support a conclusion here to affirm the conviction, because of the choice of trial counsel to accept the absence of a cautionary instruction and to state no objection to the prosecutor's final argument. The absence of objections and requests by appellant at trial "weighs heavily" on the appellate courts. *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). Unless a prosecutor's remarks are "unduly prejudicial," the defendant is deemed to have waived his right to raise the issue by failing to state an objection on the record.

*State v. Parker*, 353 N.W.2d 122, 127–28 (Minn.1984).

References to the religious life of the complainant here were a natural and unavoidable part of the circumstances of the case. Her daily activities included contacts with a religious school and its staff. The complainant's religious life was known by appellant and bore upon their employment relationship. Understandably, most of the evidence on the complainant's religious views were received without objection.

It is evident in the record that both appellant and the prosecutor were attempting to convince the jury that the complainant's religious views were important to the case. Appellant argued that the complainant's beliefs and associations compelled her to fabricate a version of facts regarding a voluntary sexual contact.

Under the circumstances here, I am not convinced there was undue prejudice such as to permit us to reverse without a record of an objection on the prosecutor's final argument, or a request for a cautionary instruction.