812 P.2d 1110

**STATE of Arizona, Appellee,**

v.

**Bennie Lee WEST, Appellant.**

**Nos. 1 CA–CR 89–735, 1 CA–CR 89–736.**

Court of Appeals of Arizona,
Division 1, Department C.

March 14, 1991.

Review Denied June 25, 1991.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

John C. Williams, Prescott, for appellant.

## OPINION

GERBER, Judge.

### BACKGROUND

Defendant was charged by information with aggravated assault and indicted on one count of sexual assault, one count of aggravated assault, one count of burglary in the first degree, and one count of kidnapping. The charges related to incidents

on February 14 and 25, 1988, which were consolidated for trial.

On appeal, he argues that: (1) he was denied a fair trial because of impeachment by his religious beliefs; (2) the failure to grant a continuance to prepare for trial deprived him of the right to counsel of his choosing; and (3) he was denied the right to a meaningful decision about a plea offer because his attorney failed to interview the state's witnesses prior to trial. For reasons which follow, we affirm his convictions.

## FACTS AND PROCEDURE

The parties met in Nebraska, became romantically involved, and moved to Arizona where relationship problems arose. They moved into separate bedrooms. On February 14, 1988, after bowling and drinking with friends, they came home. When the victim went to her bedroom, the defendant got in bed with her. When she tried to get him to leave, he hit her, kicked her in the stomach, and dragged her on the floor. She ran to the bathroom and called the police.

After several days in a hospital and a women's shelter, the victim returned to their home on February 25, 1988. There the defendant grabbed her, pushed her down, pointed a gun in her face, and threatened to kill her. She called the police who later arrested the defendant.

A jury found defendant guilty of two counts of aggravated assault, one count of burglary and one count of kidnapping. It found one count of aggravated assault was nondangerous. The jury did not reach a verdict on the sexual assault count.

Defendant filed a motion for new trial and a supplement. The trial court denied his motion in part but granted a new trial on the February 25 aggravated assault count. The court sentenced defendant to a presumptive term of five years for the February 14th assault and ten and one-half year concurrent sentences for kidnapping and burglary consecutive to the aggravated assault sentence. He filed a timely appeal.

## IMPEACHMENT BY RELIGIOUS BELIEFS

Defendant primarily argues on appeal that he was denied a fair trial because he was impeached by testimony about his religious beliefs. He argues that these alleged violations of Rule 610, Arizona Rules of Evidence, constitute reversible error.

A good portion of this religious testimony was initiated by defendant himself on direct examination. In relating the victim's grief over the death of her son, he volunteered that he told her she needed to let go and "let God take over." When testifying about the couple's disagreements, he stated, "And the Lord states that the man should make the woman happy, and in turn she will submit to him. And if she submits to him, then his purpose is to make her happy, and that's what I tried to do." In testifying about how he helped her deal with her problems, defendant volunteered, "I think that's what the Lord wanted me to do, and that's what I did. I think that's what He asked us to do." There were no further references to religious subjects during defendant's direct examination and none on redirect examination.

During cross-examination, defendant offered non-responsive religious references in answer to some initial nonreligious questions. The prosecutor did not move to strike these responses as improper. Instead, when defendant again volunteered religious explanations for his conduct, the prosecutor for the first time attempted to test defendant's asserted religious justification for beating the victim if she did not "submit" to him. The prosecution asked him questions about his religious beliefs, including his role as a family-oriented counselor, his acceptance of the Bible, his idea of a wife's submission to her husband, and his beliefs about the Ten Commandments. The following passage is the most concentrated of these religious-related questions:

Q. You also believe that a wife should be submissive to her husband, isn't that correct?

A. I think that's what the Bible reads.

Q. Are you a born-again Christian?

A. No, sir.

Q. But you are a Christian?

A. That's correct.

Q. You accept the Bible as word of God?

A. I have belief and faith in the Lord Jesus Christ, yes, sir.

Q. All right. You have read the scriptures?

A. Most of them, yes, sir.

Q. Are you familiar with the scripture in Ephesians 5 and 24?

A. I'm not sure.

[Objection of relevancy omitted.][1]

Q. 'Therefore, as the church is subjected under Christ, so let the wives be to their own husbands and everything.'
Is that reference to the subjectivity of the wives to the husbands?

A. I am not a theologian. I can't interpret. There are many interpretations to every verse in the Bible by many different people.
All I know is that I'm a Christian because I have belief and faith in the Lord Jesus Christ, and I believe that you should treat your neighbors as you would yourself, including your enemies. I love my neighbors. I even love you. I don't like what you're doing, but I love you.

Q. I'm glad to hear that.
You believe in keeping the Commandments then, true?

A. I believe working as close to the Lord as I can.

Q. That includes avoiding fornication?

A. I'm not without sin.

Q. Are you selective about the ones you keep?

A. I don't need to answer that.

. . . . .

Later, the prosecutor asked further questions about the defendant's idea of submission of a woman to a man:

Q. As the wife would submit herself to the husband, correct?

A. Well the wording in the Bible, if you're referring back to the Bible again, is that if a man makes a woman happy, she will submit to him. Just as in turn, if the woman is submitting to her husband, he will make her happy.

Q. All right. But part of the process was she was to submit to you, right? And you would make her—

A. I suppose if I was making her happy, yes, sir.

Q. And you would make her happy, and you made every effort to make her happy?

A. I did.

Q. And so she should have submitted, correct?

A. Well, I'm not in a position to tell people what they should and shouldn't do. You know, you work, you work at a relationship. If something doesn't hatch right away, you don't throw it out with an old can. You work at it.

Q. Sure.

A. That's what love is all about. In fact, God is love. And if you believe in God, then he gives you the strength, as weak as you are, to work through those things.

This dialogue between the prosecutor and the defendant generally addresses the defendant's conviction that his actions toward the victim were religiously justified because of the victim's failure to submit to him. One of his defenses was that he was permitted by his religious beliefs to treat the victim as he did.

On rebuttal, the victim was called. On her cross-examination, defense counsel on his own initiative asked her about her religious beliefs as well as her observations of defendant's attitude toward religion. The prosecutor, who made no objection to these additional religious references, then referred to defendant's religious convictions in his closing argument.

As the quoted passages indicate, defendant did not object to the religious references except on relevancy grounds. They were not raised in the motions for new trial

1. When defense counsel objected to the religious references based on relevancy, the prosecutor responded that defendant had a certain religious belief about the submissiveness of husband and wife and that the questions addressed these beliefs.

or supplement. The state argues that for these reasons the defendant cannot now raise on appeal the issue of impermissible impeachment via religious belief.

### The Law on Religious References

■ Examination questions at trial regarding religious beliefs designed to enhance witness credibility are improper under both Article 2, § 12 of the Arizona Constitution and Arizona Rule of Evidence 610. *See generally* Annot., 27 A.L.R. 4th 1167 (1984) and 76 A.L.R.3d 539 (1977). It is equally improper to impeach a defendant's credibility by showing the presence or absence of religious beliefs. The prohibition against questioning a defendant on religious beliefs applies when the credibility of the witness is being attacked. *Tucker v. Reil,* 51 Ariz. 357, 77 P.2d 203 (1938). If the use of religion constitutes fundamental error, the failure to object does not preclude us from addressing it. *State v. Thomas,* 130 Ariz. 432, 636 P.2d 1214 (1982).

■ Religious references are admissible, however, for purposes other than impeaching credibility. When religious references relate to the identification of the assailant and not solely to the victim's credibility, the references serve a legitimate purpose. *State v. Stone,* 151 Ariz. 455, 728 P.2d 674 (App.1986); *State v. Crum,* 150 Ariz. 244, 722 P.2d 971 (App.1986). It is also proper to inquire into religious training to determine whether a witness knew of the wrongfulness of the acts. *State v. Taylor,* 109 Ariz. 481, 512 P.2d 590 (1973). Reference to religion by the prosecution is also proper when, as here, the defense uses religion to justify a defendant's conduct. *See Hermanson v. State,* 570 So.2d 322 (Fla.App.1990).

Defendant argues strongly that these religious references were improper. The strongest case supporting his claim is *State v. Thomas, supra.* In that case, the prosecution on its own initiative used religious belief to bolster the credibility of both the victim and her grandmother. *Id.* 130 Ariz. at 437, 636 P.2d at 1219. The *Thomas* court concluded that under those circum-

stances it was highly probable that the references improperly influenced the jury, viewing the credibility of the victim as the determinative factor because only the victim's testimony established guilt.

■ In the present case, however, the defendant first volunteered the religious references. He introduced the religious justification that women were to be submissive to men. The prosecutor then sought on cross-examination to show that this religious justification was inconsistent and selective. Once the defendant "opened the door" to this religious justification, the state was permitted to rebut the statements offered to justify his conduct. Since the religious references were made in the context of defendant's purported justification for criminal conduct, rather than to enhance or impair his credibility, we find no error.

## DENIAL OF CONTINUANCE TO SUBSTITUTE COUNSEL

On his second argument, defendant argues that the failure to grant a continuance for substitution of counsel deprived him of his right to counsel. We disagree. He was represented by several public defenders. Attorney Pamela J. Franks, whom defendant sought to retain instead of the public defender, moved for a 60–day continuance to prepare. The court found that Franks' notice of appearance did not comply with Rule 6.3 because she could not be prepared for the trial date. The public defender then told the court he would be ready for the scheduled trial date. Franks stated that unless the court would give her a 60–day continuance, she would not be prepared. The trial judge then permitted her withdrawal and ordered the public defender to remain as trial counsel.

■ While a defendant has the right to be represented by counsel, the right to choice of counsel is not absolute nor is there a right to repeated continuances to hire new counsel. *State v. Hein,* 138 Ariz. 360, 674 P.2d 1358 (1983). Several factors must be considered on such a motion to continue: whether other continuances were

granted, whether other competent counsel was prepared, the convenience to the litigants and witnesses, the length of requested delay, the complexity of the case and ·reason for delay. *Id.* at 369, 674 P.2d at 1367.

Here there had already been several continuances. Defendant had been in jail for eight months. Franks was not prepared to try the case on the firm trial date. She could not make a positive assurance that she would be ready for trial at the time for which she requested it be continued. We find no error in denying the motion to continue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

After the trial, defendant was appointed new counsel who filed a motion for new trial which alleged several matters, including ineffective assistance of counsel. Competency of counsel is one of the factors to be considered under *State v. Hein, supra;* therefore we must review the trial court findings.

To demonstrate ineffective assistance of counsel, defendant must show that his counsel's actions were unreasonable under prevailing professional norms. *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985), *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). There must also be a reasonable probability that, absent counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 398, 694 P.2d at 228.

 The trial court found, after an extensive hearing, that the public defender's conduct for his client was reasonable. The court stated that even assuming it was unreasonable, defendant did not show any prejudice. We too find no merit to the claim that failure to grant a continuance to allow Franks to represent defendant resulted in ineffective assistance of counsel. There is no reason to believe that the verdict would likely have been different had counsel succeeded in the motion to continue or in any of his other related motions.

## MEANINGFUL PLEA DECISION

Finally, defendant claims he was denied the right to a meaningful decision on whether to accept a plea offer when his attorney failed to interview witnesses prior to trial. He failed to raise this issue in the trial court. The silent record before us prevents us from considering this claim. Defendant's remedy would generally be to file a petition for post-conviction relief unless the issue is precluded. *State v. Conner,* 163 Ariz. 97, 786 P.2d 948 (1990).

## CONCLUSION

Pursuant to A.R.S. § 13–4035, we have examined the record for fundamental error and have found none. The convictions and sentences are affirmed.

BROOKS and CONTRERAS, JJ., concur.