NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TIMOTHY BURTON MCGEE, *Appellant.*

No. 1 CA-CR 24-0133

FILED 12-12-2024

Appeal from the Superior Court in Maricopa County
No.  CR2020-122860-001
The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Jennifer M. Perkins and Vice Chief Judge Randall M. Howe joined.

---

**C A T L E T T**, Judge:

**¶1**　　　　Timothy Burton McGee ("McGee") appeals his convictions and sentences for ten counts of sexual exploitation of a minor. McGee argues the State attacked his credibility based on his religious beliefs in violation of Article 2, Section 12 of the Arizona Constitution; the superior court improperly considered his lack of remorse in sentencing; and cumulative prosecutorial error undermined his right to a fair trial. Although we conclude that the State committed error by attacking McGee's credibility based on his religious beliefs and the superior court erred in considering McGee's lack of remorse during sentencing, we affirm because McGee has not shown prejudice or cumulative error.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Between November 2019 and April 2020, Dropbox submitted three cyber tips to the National Center for Missing and Exploited Children (the "Center") regarding child sexual exploitation material ("Exploitation Material") found in two Dropbox accounts. The Center referred the tips to a detective at the Phoenix Police Department who determined that McGee accessed the Dropbox accounts from devices connected to the internet at his home, work, and church. The mobile IP address of McGee's cellphone also accessed those same Dropbox accounts.

**¶3**　　　　In June 2020, detectives executed a search warrant at McGee's home. When questioned, McGee denied having a laptop, but the detectives found a MacBook in the trunk of his car. A search of the laptop revealed the presence of Exploitation Material, shortcuts and browser bookmarks to Dropbox, a dark web browser, and cloud-sharing platforms used to exchange Exploitation Material. The laptop also contained many personal files belonging to McGee, including emails, his 2015 tax return, and his resume.

¶4        The detective assigned to the case sent ten files containing Exploitation Material to Phoenix Children's Hospital to be assigned a sexual maturity rating.  A nurse practitioner prepared a report indicating that all ten files contained videos and images of Exploitation Material.  The report concluded that the children depicted in the files were all under fifteen years of age and as young as under one year old.  A grand jury indicted McGee on ten counts of sexual exploitation of a minor based on the ten files in the sexual maturity report.  McGee waived his right to a jury trial and the superior court conducted a bench trial.

¶5        At trial, the State questioned McGee regarding his church attendance and religious beliefs.  In the first line of questioning, the prosecutor asked when McGee attended a particular church and whether he still did so.  McGee said that he attended the church between 2011 and 2020 but now attends a different church.  The prosecutor later returned to questions about McGee's religion:

> Q:      Now, fair to say that -- let me -- I think I asked you this at the beginning:  You consider yourself a religious man?
>
> (McGee's Attorney):        Objection.  Relevance.
>
> THE COURT:        Overruled.
>
> A:      I do.  I'm a Christian.
>
> Q:      And fair to say this type of material is, well, to put it lightly, frowned upon?
>
> A:      Disgusting.  Satanic, you might say.
>
> Q:      And fair to say that you also wouldn't want to get in trouble, right, sitting here today?
>
> A:      I mean, who wants to be in trouble?
>
> THE COURT:        I couldn't hear you.
>
> A:      I said who wants to be in trouble.  I guess.  Yeah.  It's fair to say, yeah.

¶6        The prosecutor also questioned McGee regarding his leukemia diagnosis. She asked whether McGee ever told his attorney about the diagnosis and, after McGee's attorney objected based on relevance, explained that her questioning went to McGee's credibility because she had

3

not received any documentation of the diagnosis. The court allowed the question and McGee explained that his diagnosis came up in a personal discussion with his attorney, but he did not remember when the discussion occurred and did not realize it would be relevant.

¶7            The court found McGee guilty on all ten counts. McGee asked the court to "not sentence over the presumptive [prison term]" and the State requested a "slightly aggravated term." In its sentencing recommendation, the State noted that McGee "ha[d] not shown an ounce of remorse for his actions." It continued by listing the following aggravating factors: the emotional and physical harm to each of the victims, their young age, the need to deter possession and distribution of Exploitation Material, and the lifelong humiliation of the victims whose childhood sexual abuse is forever memorialized on the internet. The State acknowledged one mitigating factor—these were McGee's first felony convictions. For mitigation, McGee asked the court to consider his lack of criminal history, lengthy work history, family support, leukemia diagnosis, suicidal ideation, depression, and that he was sexually abused as a child.

¶8            For aggravation, the court found that McGee possessed over one hundred additional files with Exploitation Material that were not charged, the files "involved videos of extraordinarily young children and infants" being abused, and each child victim lives with "lifelong and immeasurable harm." The court also found "the defendant [had] absolutely no remorse for his conduct." For mitigation, the court found McGee had no criminal history, had a job and family support, and lives with leukemia. The court concluded that the aggravating and mitigating factors balanced each other out and the presumptive term was appropriate to protect the community and deter possession of Exploitation Material. The court sentenced McGee to seventeen years on each of the ten counts, to be served consecutively, with credit for presentence incarceration.

¶9            McGee timely appealed. We have jurisdiction under Article VI, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

¶10            On appeal, McGee makes three primary arguments: (1) the prosecutor erred by questioning McGee regarding his religious beliefs, (2) the superior court erred by considering his lack of remorse during sentencing, and (3) he was denied a fair trial because of cumulative prosecutorial error. Because McGee failed to object to any of the alleged

4

errors at trial, we review for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018).

**¶11** To succeed under fundamental error review, an appellant must first establish there was an error at trial. *Id.* at 142 ¶ 21. Next, an appellant must show that the error was fundamental because it (1) went to the foundation of the case, (2) took away an essential right necessary to demonstrate a viable defense or rebut the prosecution's case, or (3) was so egregious that he could not possibly have received a fair trial. *Id.* at 141–42 ¶¶ 18–21. Finally, if the appellant relies on prong one or two, there must be a separate showing of prejudice. *Id.* at 142 ¶ 21. "The [appellant] bears the burden of persuasion at each step." *Id.*

## I.      Questions Regarding McGee's Religious Beliefs

**¶12** McGee argues the State asked questions about his religious beliefs to challenge his credibility in violation of Article 2, Section 12 of the Arizona Constitution. Although McGee objected to the prosecutor's line of questioning based on relevance, he did not object based on Article 2, Section 12. Thus, we review for fundamental, prejudicial error. *See State v. Montoya*, ___ Ariz. ___, 554 P.3d 473, 487 ¶ 13 (2024) ("[R]aising one objection at trial does not preserve [a different] objection on appeal.") (citing *State v. Long*, 119 Ariz. 327, 328 (1978)).

### A.      Error

**¶13** McGee asserts that the prosecutor erred by challenging his credibility based on his religion. We agree. The Arizona Constitution protects an individual's liberty of conscience and prohibits "question[s] touching his religious belief in any court of justice to affect the weight of his testimony." Ariz. Const. art. 2, § 12; *see also* Ariz. R. Evid. 610 ("Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility."). This constitutional provision "is a direct prohibition against questioning any witness as to his religious belief, *for the purpose of affecting his credibility.*" *State v. Thomas*, 130 Ariz. 432, 436 (1981) (quoting *Tucker v. Reil*, 51 Ariz. 357, 363 (1938)) (emphasis added). Our supreme court in *Thomas* reversed the appellant's convictions because the "victim's testimony stood alone as evidence establishing the appellant's guilt" and her testimony was improperly bolstered by "repeated and deliberate references to [her] religious nature." 130 Ariz. at 436–37.

**¶14** But questions touching on religion are not entirely off limits. Instead, they "are admissible if offered for some legitimate purpose other than attacking witness credibility." *State v. Towery*, 186 Ariz. 168, 178 (1996).

For example, questions probative of identity, modus operandi, or privilege are proper even if they concern the witness's religious beliefs. *State v. Stone*, 151 Ariz. 455, 459 (App. 1986) (concluding that questions regarding sacred garments were proper for identifying the defendant even if "they relate[d] somewhat to the credibility of both the victim and the petitioner"); *State v. Crum*, 150 Ariz. 244, 246 (App. 1986) (concluding questions regarding the chapel in appellant's house and his position in the church properly established his modus operandi with respect to abusing altar boys and whether clerical privilege was properly invoked).

¶15         Here, the State claims the prosecutor's questions regarding McGee's religious beliefs were not used to challenge his credibility and thus no error occurred. The State is correct with respect to the first line of questioning, but wrong as to the second.

¶16         The prosecutor first asked when McGee attended a particular church and if he still was attending. McGee answered that he attended the church from 2011 to 2020 but now attends a different church. These questions did not attack or support McGee's credibility as a witness; rather, they were used to connect McGee to the many Dropbox logins from the church's IP address in 2019 and 2020.

¶17         The State's second line of questioning, however, violated Article 2, Section 12. The prosecutor asked McGee the following questions: whether he is a "religious man," whether the material he was accused of possessing is "frowned upon," and whether he did not want to "get in trouble." McGee responded that he is Christian, the material was "[s]atanic," and he did not want to be in trouble. The State argues that the questions did not imply McGee was dishonest in his answers, but otherwise offers no valid reason for asking them. Read together and in context, the prosecutor used the questions to insinuate—no matter how McGee responded—that at least one of McGee's answers was untrue. Either McGee was a faithful Christian who was lying about not possessing Exploitation Material, or he was lying about being a faithful Christian to minimize the chances of conviction. No matter how you slice it, the prosecutor used McGee's religious beliefs to attack his credibility. Thus, the second line of questioning was error.

### B.         Fundamental Error

¶18         McGee argues, under prong one of the *Escalante* framework, that the erroneous questioning went to the foundation of the case because it directly affected a key factual dispute—his credibility—and denied him a

constitutional protection—freedom from having his religious beliefs used to attack his credibility. Fundamental error going to the foundation of the case "relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures." *Escalante*, 245 Ariz. at 141 ¶ 18.

¶19 Here, McGee claims his credibility was a key factual dispute and therefore the religious challenge to his credibility satisfies prong one. The State concedes that if there was error, then it was fundamental. We agree the error was fundamental, but on grounds different than McGee urges. There was ample non-testimonial evidence supporting that McGee possessed and accessed Exploitation Material, and thus the credibility of McGee's testimony was not as key as he believes. But, in any event, the prosecutor's questioning about McGee's religious beliefs deprived him of a constitutionally guaranteed procedure under Article 2, Section 12. Thus, the error was fundamental. *See Escalante*, 245 Ariz. at 141 ¶ 18 (explaining that error going to the foundation of the case "deprives the defendant of constitutionally guaranteed procedures").

### C.    Prejudice

¶20 Because McGee argues fundamental error under prong one of *Escalante*, he must separately show prejudice. *Id.* at 142 ¶ 21. To demonstrate prejudice, McGee must show that "without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *Id.* at 144 ¶ 31. This is an objective standard and "excludes imaginative guesswork." *Id.* In considering whether an appellant has shown prejudice, we consider the entire record, including the parties' theories of the case and the amount of "error-free evidence supporting a guilty verdict." *State v. Fierro*, 254 Ariz. 35, 41–42 ¶ 21 (2022) (citation omitted). Moreover, "judges are presumed to know the law and to apply it in making their decisions." *State v. Lee*, 189 Ariz. 608, 616 (1997). Hearing erroneously elicited testimony does not necessarily mean a judge considered it in rendering a verdict. In fact, we presume the opposite. *State v. Djerf*, 191 Ariz. 583, 595 ¶ 41 (1998) ("We presume the trial court disregards all inadmissible evidence in reaching a decision.").

¶21 Here, McGee waived his right to a jury trial and agreed to a bench trial. Thus, we consider whether the superior court, sitting as the trier of fact, could have plausibly and intelligently returned a different verdict without the erroneous questioning. *See Escalante*, 245 Ariz. at 144 ¶ 31. McGee argues that, without the error, the verdicts "could have been different because the trial court could have found him more credible[.]"

McGee's argument—which layers one "could have" upon another—asks us to engage in the "imaginative guesswork" *Escalante* instructs us to avoid. *See id.* As explained, only one of the State's two lines of questioning about McGee's religion was erroneous, and that erroneous line of questioning was fleeting. Moreover, the State did not later exploit McGee's testimony. *See Fierro*, 254 Ariz. at 43 ¶ 31 ("The State also did nothing to exploit the erroneous instruction."). McGee cites no evidence, and we have located none in the record, supporting that the court considered his answers to the single line of erroneous questioning in determining his credibility or guilt. *See Djerf*, 191 Ariz. at 595 ¶ 41.

**¶22** More importantly, the volume of error-free evidence showing that McGee possessed and accessed Exploitation Material refutes the existence of prejudice. Unlike in *Escalante* and *Thomas*, the State supported its case here with much more than the erroneously admitted testimony. *Cf. Escalante*, 245 Ariz. at 143 ¶ 27 ("In short, the linchpin of the State's case against Escalante [was the erroneous drug courier evidence]."); *Thomas*, 130 Ariz. at 436, 437 ("The victim's testimony stood alone as evidence establishing the appellant's guilt" and the prosecutor erroneously bolstered her credibility "by making repeated and deliberate references to the religious nature of the victim."). The error-free testimonial and forensic evidence presented at trial amply supported that McGee possessed Exploitation Material using Dropbox, that he accessed that material by logging in from various devices, and that he also possessed and accessed Exploitation Material on a MacBook. Given the quantum of error-free evidence supporting McGee's guilt, he has not shown that "without the error, a reasonable [judge] could have plausibly and intelligently returned a different verdict." *Escalante*, 245 Ariz. at 144 ¶ 31; *see also id.* at ¶ 34 ("[T]he amount of error-free evidence supporting a guilty verdict is pertinent to that inquiry."). Thus, McGee has failed to meet his "formidable burden" of showing prejudice "warrant[ing] the 'rare case' remedy of reversal and a new trial." *Id.* at 145 ¶ 35.

## II. Use of McGee's Lack of Remorse at Sentencing

**¶23** McGee argues the State's use, and the court's consideration, of his lack of remorse at sentencing violated his right against compelled self-incrimination. The State concedes fundamental error occurred but argues McGee was not prejudiced.

**¶24** To establish prejudice, McGee must show that "if the trial court had not improperly considered his lack of remorse . . . the court could have reasonably imposed a lighter sentence." *State v. Trujillo*, 227 Ariz. 314,

318 ¶ 16 (App. 2011). Again, this is an objective standard and we are not permitted to engage in imaginative guesswork. *Escalante*, 245 Ariz. at 144 ¶ 31. "[W]e look to the specific posture of the case to evaluate the prejudicial impact of a fundamental error" during sentencing. *Trujillo*, 227 Ariz. at 319 ¶ 19.

¶25 Here, McGee asked the court not to impose a "sentence over the presumptive [prison term]," while the State requested a "slightly aggravated term." Under A.R.S. § 13-705(F), the range of sentences the court could have imposed for each of the ten counts was: a minimum of ten years, a presumptive term of seventeen years, and a maximum of twenty-four years. The court ultimately imposed the presumptive term of seventeen years for each of the ten counts. In so doing, it *once* mentioned McGee's lack of remorse and instead focused its discussion of aggravation on the "extraordinarily young children and infants being molested and raped" as well as the more than one hundred additional files with Exploitation Material that McGee was not charged with possessing. *Cf. Trujillo*, 227 Ariz. at 319 ¶ 20 (finding prejudice when the court stated "no less than five times that Trujillo . . . had shown no remorse for his conduct" and "imposed significantly harsher sentences than those recommended by the State."). The record supports that the court would have imposed the presumptive sentence even without consideration of lack of remorse. *See State v. Ramsey*, 211 Ariz. 529, 543 n.7 ¶ 45 (App. 2005) (affirming presumptive sentence, even when trial court referenced lack of remorse as an aggravating factor, based on the "number of additional aggravating factors the trial court cited").

¶26 McGee asks us to apply *State v. Pena*, 209 Ariz. 503, 509 ¶ 23 (App. 2005), to conclude that omitting the lack of remorse aggravator changes the "sentencing calculus" and therefore his sentence could have been different. But *Pena* is inapposite. There, the court reviewed for harmless error, so it was the State's burden to prove that "absent the error, the court would have reached the same result." *Id.* at 507 ¶ 15; *Montoya*, 554 P.3d at 487 ¶ 12 (explaining that, under harmless error review, the State must establish "beyond a reasonable doubt that the error did not affect [the defendant's] sentence"). But here, because McGee failed to object and fundamental error review applies, he had the burden to prove prejudicial error. He has not done so.

## III.    Cumulative Prosecutorial Error

¶27 McGee also argues we should vacate his convictions based on cumulative prosecutorial error. To succeed on that claim, McGee must

(1) assert cumulative error exists, (2) cite to the record where alleged errors occurred, (3) cite to legal authority establishing that the errors constitute prosecutorial error, and (4) set forth reasons why the cumulative error denied him a fair trial. *State v. Vargas*, 249 Ariz. 186, 190 ¶ 14 (2020). We only reverse based on cumulative error if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Robinson*, 253 Ariz. 121, 143 ¶ 64 (2022) (quoting *State v. Payne*, 233 Ariz. 484, 511 ¶ 106 (2013)).

¶28 McGee alleges three instances of prosecutorial error: when the prosecutor invaded the attorney-client privilege, attacked his credibility based upon his religious beliefs, and urged the court to consider his lack of remorse at sentencing. We address whether each instance constitutes error and whether the cumulative error denied McGee a fair trial.

### A. The Attorney-Client Privilege

¶29 McGee argues the prosecutor erred by invading the attorney-client privilege when questioning him regarding his leukemia diagnosis. At trial, the prosecutor asked whether McGee ever told his attorney about the diagnosis. McGee's attorney objected on relevance grounds, which the court overruled.

¶30 McGee argues the prosecutor should not have asked about discussions with his attorney because they were privileged. McGee, however, fails to establish that the communication with his attorney about his diagnosis was made to secure legal advice or that the communication was made in confidence. *Clements v. Bernini*, 249 Ariz. 434, 439–40 ¶ 8 (2020) (requiring that privileged attorney-client communication be made "to secure or provide legal advice" and "in confidence"). Instead, McGee testified that he disclosed his diagnosis while "talking to [his attorney] on a personal level" after his attorney shared that his "father [also] had leukemia." McGee has not shown that the communication was privileged, and we find no error.

### B. McGee's Religious Beliefs

¶31 We have concluded the prosecutor erred by questioning McGee about his religious beliefs to attack his credibility. *See* Ariz. Const. art. 2, § 12; Ariz. R. Evid. 610.

### C.     Lack of Remorse at Sentencing

**¶32**        We have also concluded that the State's argument and the court's consideration of McGee's lack of remorse at sentencing was error. The State urges us not to consider this error because it occurred during sentencing.   We need not decide whether we can consider prosecutorial error during sentencing as part of cumulative error review.   Even if we can, McGee's cumulative error claim fails.

### D.     Cumulative Effect of Errors

**¶33**        Having identified two instances of prosecutorial error, we consider whether the cumulative effect of those errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Robinson*, 253 Ariz. at 143 ¶ 64.   It did not.   These were isolated instances of non-prejudicial error (*see supra* ¶¶ 16, 19-21, 22-25), and the record does not establish that the errors otherwise resulted in a trial infected with unfairness.   Thus, McGee's cumulative prosecutorial error claim fails.

### CONCLUSION

**¶34**        We affirm McGee's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:     AGFV