580 P.2d 1190

**STATE of Arizona, Appellee,**

v.

**Douglas Nathaniel BOWIE, Appellant.**

**No. 4147.**

Supreme Court of Arizona,
En Banc.

June 23, 1978.

Bruce E. Babbitt, former Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Paul Hunter, Yuma, for appellant.

HAYS, Justice.

Appellant Douglas N. Bowie was charged by indictment with three counts of molesting a child under the age of fifteen, two counts of lewd and lascivious acts upon children under fifteen, and one count of sodomy upon a child under fifteen. Specifically, the indictment charged that Bowie had molested, and committed lewd and lascivious acts upon, a six-year-old girl and her four-year-old brother, and that he had molested and sodomized a six-year-old boy. The acts against the six-year-old boy allegedly occurred approximately one year before Bowie was arrested; this child was seven at the time of trial. These acts were supposed to have occurred when Bowie was babysitting for the children.

After trial, the jury returned a verdict of guilty of two counts of child molestation, guilty of one count of lewd and lascivious

acts, and not guilty of sodomy. The counts of molesting and committing lewd and lascivious acts upon the four-year-old were dismissed by the trial court because the four-year-old was found incompetent to testify.

Appellant moved for a new trial; the motion was granted as to the conviction of the lewd and lascivious act, but denied as to the other convictions. Appellant was sentenced to one to four years on each remaining conviction, the sentences to be concurrent. The trial court later acquitted appellant of the lewd and lascivious charge.

Appeal was taken to the Court of Appeals. The Supreme Court has jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e).

Appellant urges that the trial court should have granted a mistrial because the prosecutor, in his opening statement, described Bowie's alleged acts against the four-year-old, and these acts were not later proved at the trial. Appellant postulates that the prosecutor's mentioning the acts prejudiced the jury so that they could not render a fair and impartial verdict on the counts relating to the other two children.

■ This is a very difficult issue to resolve, for when one is accused of crimes as reprehensible as those before us, the jury might easily be swayed by hearing improper matters. It may be prejudicial error to admit evidence suggesting that the accused has committed bad acts, other than the crimes for which he is on trial. *State v. Serrano,* 17 Ariz.App. 473, 498 P.2d 547 (1972). Corrective instructions of the court sometimes cannot erase the effect of such error. *Serrano, supra.*

However, at the time of the prosecutor's remarks, the jury had before it an indictment charging Bowie with the crimes against the four-year-old. Bowie was at that time on trial for these crimes. So long as the charges relating to the four-year-old were before the jury, the prosecutor had a right to discuss them in his opening statement.

The prosecutor's opening statement did not mention bad acts other than the acts under consideration at this trial. Furthermore, the opening statement did not contain *evidence*. The court instructed the jury that what the prosecutor and defense counsel said was not evidence, and that they must base their verdict only on the evidence. Additionally, the judge told the jury that he had ordered the dismissal of the counts involving the four-year-old and that the jury was not to consider these charges.

■ The opening statement should not contain any facts which the prosecutor cannot prove at trial. *State v. Burruell,* 98 Ariz. 37, 401 P.2d 733 (1965). In the instant case, proof of the facts relating to the four-year-old could come only from the child's testimony, and the child's competency as a witness was not ruled upon until just before he was to testify.

■ At the time of the opening statement, the prosecutor could not be sure that he could prove the acts against the four-year-old, but the record supports a good-faith belief that the four-year-old would be permitted to testify. The child was bright for his age; he clearly recalled the events surrounding the alleged criminal acts. The psychologist who evaluated him stated that he showed evidence of conscience development, and could distinguish between truth and untruth, that he had "some idea" of moral or ethical standards, and some sense of right and wrong. The psychologist also said that the child was a "pretty alert" observer, had adequate verbal ability to state what he saw, that he probably was capable of relating events that he saw or that had happened to him, and that testing seemed to indicate that the child was basically honest.

Under the facts of this case, the prosecutor's remarks concerning the alleged crimes against the four-year-old were not error because the remarks referred to crimes presently before the jury, and there was

justification for believing that evidence of these crimes would be presented through the four-year-old. Any possible prejudice from the opening statement was overcome by the court's cautionary instructions that evidence did not come from the attorneys and that the verdict must be determined only by reference to the evidence, and that he was withdrawing the counts charging crimes against the four-year-old from the jury's consideration. Fundamental to our holding is the fact that the prosecutor referred to the acts only in the opening statement, and he never mentioned these acts against during the trial.

We note that the defense attorney could have moved to determine the competency of the four-year-old before trial and obtained a dismissal of the charges relating to this child before the opening statement. Then the prosecutor could not have mentioned the acts which the defendant allegedly committed upon the four-year-old.

■ Appellant next contends that the court erred in refusing to give the following instruction:

> "In order for you to return a verdict of guilty upon the testimony of the witness named in the Indictment alone, each witness' story must be reasonable, consistent and not inherently impossible and improbable to a degree that would make it incredible to the ordinary man."

We find no error because the ideas contained in this instruction are adequately covered in the instructions which the court did give to the jury.

Appellant charges the trial court with error in refusing to require the state to elect to present to the jury a single count against each victim. It is appellant's theory that it was prejudicial to him to allow the same transaction to go to the jury under two different counts.

■ As a general principle, it is prejudicial and reversible error to submit separate charges to the jury where each offense con-

tains identical elements, where identical facts are used to support each charge, and where the only difference is in the name or number of the statute under which the charge is made. *State v. Hunt*, 2 Ariz.App. 6, 406 P.2d 208 (1965). Nevertheless, it is not error to submit multiple charges to the jury where the offenses contain overlapping elements and the same fact situation is used to support each charge. *State v. Jorgenson*, 108 Ariz. 476, 502 P.2d 158 (1972).

■ If the jury finds the accused guilty of two charges arising from the same transaction and there are not sufficient independent facts to support the elements of both crimes, the trial judge should then set aside the lesser conviction. *State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1971); *State v. Taylor*, 109 Ariz. 267, 508 P.2d 731 (1973); *see also* A.R.S. § 13–1641.

■ Appellant was charged with committing lewd and lascivious acts upon the girl (count IV), with molesting her (count III) and the seven-year-old boy (count V), and with committing sodomy upon the seven-year-old boy (count VI). Because the evidence did provide a sufficient basis for these charges, it was proper to submit all four charges to the jury. *Jorgenson, supra*. Appellant was found guilty of counts III, IV and V and acquitted of count VI. The trial court vacated the verdict of guilty on count IV (lewd and lascivious against the girl) and entered a judgment of acquittal upon that count. Thus, appellant was ultimately convicted and sentenced for only two counts, each based upon a different event. This is a proper result under the authorities previously cited.

Another issue raised by appellant is that his Fifth Amendment rights were denied by the state's comment upon his post-arrest silence. This contention is based upon the following exchange between the deputy county attorney and the investigating officer:

> Q. After reading the defendant his rights—let me back up a little bit. Is the

defendant that you arrested at apartment F–2 present in the courtroom here today?

A. Yes, sir, he is.

Q. Where is he?

A. He is sitting by Mr. Hunter, just to the left.

MR. SHELLEY [deputy county attorney]: May the record reflect that he has indicated the defendant?

THE COURT: Yes, it may so reflect.

BY MR. SHELLEY:

Q. After you read Mr. Bowie his rights did Mr. Bowie make any statements to you?

A. No.

MR. HUNTER [defense counsel]: Objection, if Your Honor please. I object most strongly to this. That is an improper question.

THE COURT: The answer may stand.

MR. SHELLEY: I'm sorry?

THE COURT: The answer may stand.

■ Generally, it is error for the prosecutor to draw a derogatory inference from the fact that the accused declined to speak to police upon his arrest. *State v. Shing*, 109 Ariz. 361, 509 P.2d 698 (1973); *see also Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, in the present case, the prosecutor never commented upon the accused's silence during custodial interrogation; the prosecutor merely questioned the officer about the events of the arrest and inquired whether the defendant said anything.

■ The rationale of *Doyle, supra*, suggests that the state should not make *any* reference to the fact that the defendant exercised his right to remain silent after arrest. Consequently, it was improper for the prosecutor to ask the officer if appellant made any statements, but we do not find the question to be reversible error for the following reasons: This one exchange between the prosecutor and officer was the only time appellant's post-arrest silence was mentioned; when appellant took the stand,

he was not cross-examined about his failure to give a statement to the police; the prosecutor said nothing about appellant's silence in his jury arguments. Under these circumstances, we find that the prosecutor's improper question did not prejudice the appellant, and there was no reversible error. In the future, the state should scrupulously avoid any indication that the accused kept silent after arrest.

■ Appellant claims that the trial court abused its discretion in permitting the two children to testify. Whether children as young as the two who testified in this case are competent witnesses is a decision left to the discretion of the trial court. *State v. Dominguez*, 87 Ariz. 149, 348 P.2d 919 (1960). Before permitting a young child to testify, the trial judge must ascertain that the child is capable "of receiving just impressions of the facts respecting which they are to testify, [and] of relating them truly." A.R.S. § 12–2202; *Keefe v. State*, 50 Ariz. 293, 72 P.2d 425 (1937); *see also* A.R.S. § 13–1801. The child must also demonstrate to the trial court that he understands the necessity of testifying truthfully. *Keefe, supra.*

■ The two children in this case were questioned out of the presence of the jury by the court, the prosecutor, and the defense attorney. The court had the opportunity to observe the demeanor of each child. The statements of both youngsters concerning truth and lies and the consequences of lying warrants the conclusion that they both understood the difference between truth and falsity and would relate the truth at trial. It is thus apparent that the trial court did not abuse its discretion in ruling that these two children were competent witnesses.

Appellant raises several points which allegedly demonstrate that the children were incompetent to testify; we now examine briefly those points which have some merit.

Appellant notes that neither child knew what "oath" meant. This court has previ-

ously held that where a child witness understands the difference between truth and falsehood and understands that he must tell the truth at trial, it is of no consequence that the child did not comprehend "oath." *Keefe, supra.*

Appellant is also concerned that the girl feared her mother, rather than God, would punish her if she lied. We cannot see that it matters who a child believes will punish him for lying, or how he believes he will be punished, so long as the child understands that lying is wrong and promises that he will tell the truth at trial.

Appellant suggests that the seven-year-old was not a competent witness because he remembered a second sodomy incident at trial which he had not mentioned before the grand jury. The transcript of the grand jury proceeding was used by defense counsel to impeach this child on another matter and could easily have been used to suggest to the jury that the child's story of the second sodomy was recently fabricated. Hence, the appellant suffered no prejudice from the child's unexpected trial testimony.

■ The fact that this child's statements to the grand jury differed somewhat from his statements at trial does not mean that he was an incompetent witness. It is the function of the jury to evaluate the credibility of testimony. *State v. Dominguez, supra.* Contradictions or a hazy recollection of events goes to the weight of the evidence, not its admissibility. *State v. Parker,* 106 Ariz. 54, 470 P.2d 461 (1970).

■ Appellant argues that the conviction of molesting the boy should be reversed because the child's testimony was inherently improbable. Appellant has not indicated how or why the little boy's story is improbable or impossible. Having carefully reviewed the record, we do not agree with appellant's characterization of the child's statements. Although some of the child's answers are slightly confusing, we are satisfied that this is due to the nature of the events he was discussing, the unfamiliar

environment of the courtroom, and the fact that adult-child communication, which is usually difficult, was rendered especially difficult by the restrictions of courtroom examination of witnesses.

■ Appellant's final contention is that the prosecutor's comment upon the failure of the defendant's wife to testify was reversible error. Appellant postulates that the prosecutor's reference to the wife's failure to testify denied appellant his right to cross-examine his wife, and also punished appellant for exercising his statutory right not to call his wife as a witness.

Appellant took the stand on his own behalf at trial; his wife did not testify. Appellant told the jury that on the night in question, he spanked the girl in his wife's presence. He reasoned that the spanking was the touching of private parts of which the little girl accused him. The child insisted that appellant had never spanked her.

Appellant also claimed that during the night on which he was supposed to have committed the crimes against the seven-year-old boy, his wife was present babysitting with him until just before the child's mother returned. This would mean that appellant's wife was present at the time the little boy said appellant committed the crimes.

Under appellant's version of the events, his wife could have been a very valuable witness for him. Apparently, to explain to the jury why this important witness for the defense had not appeared, the defense attorney stated in closing argument that appellant's wife was presently with her parents and had recently given birth to a child. The prosecutor did not mention appellant's wife in his initial summation, but in final argument, the prosecutor did respond to the defense attorney's remarks:

"Mr. Hunter got up and explained to you why Evelyn Bowie wasn't here. I don't know anything about Evelyn Bowie. I don't [know] anything about her. They tell she gave birth to a baby in

April. I believe it. I have no reason not to believe it. Mrs. Bowie could have corroborated a lot, a lot, based upon what the evidence had, but she wasn't here. She wasn't here. They didn't call her as a witness."

If the prosecutor had been the first to mention the wife's absence, this might be error because the applicable statute, A.R.S. § 13–1802, provides that in crimes like those before us, the accused's wife may be a witness only at her request. Appellant, therefore, had no control over whether or not his wife would testify, and he should not be subject to the prosecutor's adverse comments about her not coming forth as a witness. *See Zumwalt v. State*, 16 Ariz. 82, 141 P. 710 (1914).

In this case, the error, if any, in the prosecutor's comments, was invited by the defense counsel's closing argument. The appellant may not benefit from an error which he invited. *State v. Purcell*, 117 Ariz. 305, 572 P.2d 439 (1977).

We have reviewed the entire record and find no reversible error. The judgments of conviction and sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concurring.