746 P.2d 478

**STATE of Arizona, Appellee,**

v.

**Rodney Maurice CARTWRIGHT, Appellant.**

No. 6742.

Supreme Court of Arizona,
En Banc.

Oct. 6, 1987.

glary and sexual assault, all to be served consecutively. He appeals directly to this court pursuant to A.R.S. § 13–4031.

Following the filing of defendant's brief by counsel, defendant himself, with leave of court, filed a supplemental brief. We believe the two briefs, taken together, raise the following issues for our review:

(1) Whether the trial court erred in refusing to ask the jury panel a *voir dire* question requested by the defendant.

(2) Whether witness Morales' in-court identification of defendant was tainted by prior identification procedures or by improper prompting of the prosecutor.

(3) Whether the defendant's conviction for sexual assault was supported by the evidence.

(4) Whether the prosecutor improperly referred to items not in evidence in his opening statement and closing argument.

(5) Whether the trial court erred in sentencing defendant to consecutive sentences.

(6) Whether defendant was denied effective assistance of trial counsel.

We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13–4031. Finding no error, we affirm.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Mark F. Aceto, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Former Maricopa County Public Defender, Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy County Public Defender, Phoenix, for appellant.

MOELLER, Justice.

## ISSUES

Defendant Rodney Maurice Cartwright was convicted of first degree murder, burglary and sexual assault. He was sentenced to life imprisonment for the murder and to twenty-one years each on the bur-

## FACTS

Defendant's arrest and convictions arose from the rape and murder of twenty-year-old Paula Stamos. At approximately 4:00 a.m. on December 8, 1984, an assailant entered Stamos' apartment through a window. The assailant raped Stamos and shot her in the head. A friend discovered Stamos' naked body, wrapped only in a blanket, on the evening of December 8.

Eyewitness identification, physical evidence, and defendant's admissions all point to defendant as the assailant. Two witnesses, Mary Wilbert and Delores Hicks, residents of Stamos' apartment complex, placed defendant near Stamos' apartment very near the time of the crimes. They both testified that defendant visited them

shortly before 4:00 a.m. on December 8 and made sexual advances to each of them. Another witness, Benita Morales, observed defendant lurking outside Stamos' apartment shortly before the crime. Although Morales did not clearly see his face, she did observe his cap, clothes, skin color, and general appearance.

The bullet that killed Stamos had been fired by defendant's gun. Defendant's keys were found outside the window of Stamos' apartment, his shoe prints were found in and around the apartment, and blood was found on his jeans.

O.B. Brown, a former cellmate of defendant in the Maricopa County jail, testified that defendant had confessed the rape and murder to him. Brown testified that defendant told him that he was walking along when he saw Stamos and decided to enter her apartment. Defendant admitted to Brown that after "taking care of business," he had "to ... take her out" and described how he had shot her in the head.

## DENIAL OF VOIR DIRE QUESTION

Prior to jury selection, defendant submitted an extensive list of requested *voir dire* questions. One of them which the court did not ask was: "Do you believe that the Defendant, Rodney Maurice Cartwright, in this case is probably guilty?" This is the sole issue raised by counsel in the brief filed by him.

■ *Voir dire* in a criminal trial is governed by Rule 18.5(d), Arizona Rules of Criminal Procedure, which provides, in part:

**VOIR DIRE EXAMINATION.** The court shall conduct the *voir dire* examination, putting to the jurors all appropriate questions requested by counsel.

This rule grants broad discretion to the trial judge to control the scope of questions addressed to the jury. *State v. Mauro*, 149 Ariz. 24, 28, 716 P.2d 393, 397 (1986). Defendant argues that the requested question was necessary because "the rules and the case law under which we try criminal cases in this State require that a jury continue to presume a defendant innocent up to and

including the time they begin their deliberations." The trial court conducted an extensive *voir dire* which included the following:

The Court will instruct you further, those of you who sit as jurors in this case, on what the law is and the principles of law by which criminal cases are judged.

However, at this point, let me inform all of you that the law requires the State to prove the Defendant guilty of each charge against him beyond a reasonable doubt. *And the Defendant is presumed by law to be innocent.*

This means that a defendant is not required to prove innocence and not required to produce any evidence. That also—Well, let me just stop at this point.

Is there anyone who did not understand what I have just told you are basically the principles basic to our criminal justice system, and *is there anyone who doesn't agree with these things or does not think they should be law?*

If so, we should talk about this a little bit. I take it by your silence that no one has a response to those questions.

(Emphasis added.)

■ Following selection of the jury, the court also instructed the jury "not [to] form an opinion about any fact or about the outcome of this case until you have heard all of the evidence, the closing arguments of the lawyers, and the rest of my instructions on the law." At the conclusion of the case, the court gave the standard instruction on the presumption of innocence. It is, therefore, clear that the panel was adequately examined concerning the presumption of innocence and the final panel was adequately instructed on it.

The defendant's requested *voir dire* question was an awkward and redundant way of asking the jury if they understood the presumption of innocence. *See State v. Molina*, 5 Ariz.App. 492, 494, 428 P.2d 437, 439 (1967) (jury vote on guilt or innocence before trial so unrealistic that meaningful response nearly inconceivable). Asking jurors to speculate on the guilt of the defendant at that early stage of the case would

have been improper and would have conflicted with other instructions. The subject of the presumption of innocence was adequately covered by the court. The trial court properly exercised its discretion when it refused to ask the requested question. *See State v. Via*, 146 Ariz. 108, 117, 704 P.2d 238, 247 (1985).

## IN–COURT IDENTIFICATION BY WITNESS MORALES

Benita Morales, a neighbor of the victim, was up late waiting for her husband to come home from work on the night of the murder. On direct examination she testified that shortly before the time of the murder she saw the victim arrive home. She then saw a man knock on the victim's door, she saw a bulge in the man's pocket, she saw the man repeatedly returning to the door and knocking on it, and she saw him run away when a car went by. Morales described this man by general description, by race, and by the clothing he was wearing. This testimony was consistent with what she had told police officers in the early investigatory stages of the case when she provided her general description to them and told them that she would be unable to identify the person in any greater degree.

However, on redirect examination Morales identified the defendant in the courtroom as the individual she had seen the night of the murder. She was thoroughly cross-examined concerning the nature of this identification, the fact that the defendant was the only black man in the courtroom, and the fact that she had earlier been unable to identify him. On appeal, the defendant attacks the admission of this in-court identification.

■ If we correctly read the defendant's arguments, he raises a two-pronged objection to the receipt of this identification testimony. First, he argues that the testimony was inadmissible by reason of having been improperly induced by coaching or prompting by the prosecutor during a trial recess. To the extent this argument was presented to the trial judge, he rejected it

and so do we. There is absolutely nothing in the record to support this assertion.

Defendant's main attack on the in-court identification is that it should have been excluded because it was tainted by pre-trial identification procedures. Some background facts are necessary to place this issue in perspective. Prior to trial, the defense requested a *Dessureault* hearing on the identification witnesses. A *Dessureault* hearing was held, but the witness Morales was not included in it. The reason she was not included is that the prosecutor knew of her earlier inability to specifically identify the person she had seen and he knew (or believed) that she had not participated in any pre-trial identification procedures.

■ After Morales' direct testimony at the trial, the prosecutor learned that Morales, who testified through an interpreter, was willing to testify that the defendant in court was the person she observed on the evening in question. At that point, the trial court concluded that any deficiencies in her in-court identification testimony were the proper subject of cross-examination, but that there was no need to hold a *Dessureault* hearing because the witness had not participated in any pre-trial identification procedures. We agree with this conclusion. She was vigorously cross-examined concerning her identification testimony, which cross-examination included the fact that she had never been shown any photographs of any suspects.

■ After Morales' testimony, Officer Davis, one of the investigating officers, testified. He confirmed that Morales had not been shown a photographic or live line-up because she had said she would not be able to make an identification. Following Davis' testimony, Officer House testified. On cross-examination he, too, initially testified that Morales had not participated in a photographic or live line-up. House then had second thoughts about his testimony, and it is at this point that some confusion creeps into the record concerning whether Morales had been involved in viewing any photographs prior to the trial. House volunteered that he thought Morales had been

shown some photographs—then he acknowledged that she may not have been shown any photographs. These comments by House constitute the first and last suggestion anywhere in the record from any source that Morales had participated in any pre-trial identification procedures. Following House's testimony, defendant did not renew his request for a *Dessureault* hearing, did not renew his objection to the Morales testimony, and did not move that the Morales identification testimony be stricken from the record.

On appeal the defendant relies entirely upon the House testimony for the proposition that the Morales identification testimony should have been excluded. Viewing the record as a whole, it is extremely unlikely that Morales was ever shown any photographs. It is a certainty that she never participated in a live line-up and never made a pre-trial identification of any type. If she was shown any photographs she had no recollection of it, and there is no suggestion that any photographs which might have been shown to her were unduly suggestive. The photographs shown to the other witnesses were expressly found not to have been unduly suggestive.

In *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), this court set down the rules which apply in trial courts when a defendant challenges an in-court identification on the basis that it has been tainted by pre-trial identification procedures. These procedures are extremely important to ensure the integrity of the in-court identification process, and they are now thoroughly ingrained in Arizona criminal law and procedure. We do not in the least minimize the importance of *Dessureault* hearings in all cases in which a timely challenge to an in-court identification is made on the basis of pre-trial identification procedures.

*Dessureault* also sets forth the rules which apply in appellate courts where an in-court identification has been challenged at the trial court level. Under the circumstances of this case, we have no difficulty in holding that this case falls squarely within the following rule set forth in *Dessureault:*

[W]here, as here, the in-court identification is challenged at the trial level, meaningful review requires that the appellate court reach one of the following conclusions: if it can be determined from the record on clear and convincing evidence that the in-court identification was not tainted by the prior identification procedures or from evidence beyond a reasonable doubt that it was harmless, and there is otherwise no error, the conviction will be affirmed.

104 Ariz. at 382–83, 453 P.2d at 953–54.

Even if we assume that Morales was shown some photographs at some point in the pre-trial investigation, we find on the record before us by clear and convincing evidence that her in-court identification was not tainted by any such showing. Thus, under *Dessureault,* there is no ground for reversal.

## SUFFICIENCY OF THE EVIDENCE OF SEXUAL ASSAULT

Defendant next argues that his conviction for sexual assault was unsupported by the evidence. This argument is completely without merit. The elements of sexual assault are:

1) Engaging in sexual intercourse or oral sexual contact with another person;

2) Knowingly;

3) And without consent of such person.

A.R.S. § 13–1406. *See also State v. Reinhold,* 123 Ariz. 50, 57, 597 P.2d 532, 539 (1979) (construing similar predecessor statute).

■ Several items of evidence support the jury's conclusion that defendant had intercourse with Stamos the night she was murdered. In addition to his own admissions and all the testimonial and physical evidence placing him at the scene, there is evidence that he made inappropriate sexual advances to two women in the immediate vicinity shortly before the murder. Stamos' body was found naked, wrapped only in a blanket with her panties lying in the living room next to her body. There was semen in her vagina and anus. Stamos dated only one man, and he testified that

they last had intercourse the Wednesday before the Saturday murder. Defendant's participation in the intercourse creates a presumption that he did so knowingly. *State v. Jamison,* 110 Ariz. 245, 248, 517 P.2d 1241, 1244 (1974) (general intent presumed from the commission of the crime itself), *overruled on other grounds, State v. Mikels,* 118 Ariz. 495, 497, 578 P.2d 174, 176 (1978). The fact that the defendant felt he had to kill the victim is highly probative of the fact that she had not consented to the intercourse. There is, in short, ample evidence to support the conviction for sexual assault.

## OPENING STATEMENT AND CLOSING ARGUMENT

■ Defendant contends that the prosecutor committed error when he referred to defendant's touching of Delores Hicks and Mary Wilbur in his opening statement and closing argument.

In his opening statement, the prosecutor stated:

At the time [of the murder], his [defendant's] girlfriend was pregnant and she was two days away from delivering the baby.

And apparently, he had sexual interests on his mind, because he went over to see Mary and Delores and he was touching—like, he touched Delores in the area of the chest, along her breasts and he— Mary went into the bathroom, and he went in there and he touched her and put his hands around her, and everything, and he said, "Look. You know, Yo-Yo [defendant's girlfriend]—Yo-Yo's back home pregnant."

In closing, the prosecutor argued:

And at that time, his wife was two days away from giving birth, and apparently, he was interested in some kinds of sexual things because he was touching these girls, and the girls said, "You know, you better stop this or we're going to tell Yo-Yo."

Defendant wrongly asserts that the two witnesses denied any knowledge of these incidents. To the contrary, Mary Wilbert testified that defendant met her outside the bathroom and grabbed her around the waist. She testified that she told defendant, "[You] better quit playing or I'll tell Yo-Yo." Delores Hicks testified that defendant put his arm around her and touched her breast. Neither Delores nor Mary testified to the defendant's alleged statement about Yo-Yo that was referred to in the opening statement. The prosecutor's closing argument did not refer to the alleged statement about Yo-Yo by the defendant. The minor discrepancy between the opening statement and the evidence presented is not grounds for reversal. *See State v. Bowie,* 119 Ariz. 336, 339–40, 580 P.2d 1190, 1193–94 (1978) (prosecutor's good faith reference to evidence in opening statement not grounds for reversal where the trial testimony fails to support the statement, and the "evidence" is not referred to in the closing).

## PROPRIETY OF CONSECUTIVE SENTENCES

■ Defendant argues that he cannot be sentenced to consecutive sentences for crimes committed in one continuous and uninterrupted sequence. He bases this argument on A.R.S. §§ 13–604(H) and 13–604.02 (formerly 13–604.01). We recently considered and rejected the same argument in *State v. Noble,* 152 Ariz. 284, 731 P.2d 1228, (1987) (previous cases holding that A.R.S. § 13–604(H) limits judge's ability to impose consecutive sentences overruled). Consecutive sentences are permissible. *Cf., e.g., State v. Griffin,* 148 Ariz. 82, 85, 713 P.2d 283, 286 (1986) (construing A.R.S. § 13–116).

## EFFECTIVE ASSISTANCE OF COUNSEL

■ Defendant claims that he was denied effective assistance of counsel at trial. To prevail he must establish first that under the circumstances and in light of prevailing professional norms, counsel showed less than minimal competence in representing him and, second, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Lee,* 142 Ariz. 210, 214, 689 P.2d 153, 157

**314**

(1984), *citing Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendant is unable to fulfill even the first prong of the test.

■ Defendant refers us to two alleged errors that he claims fall below the level of minimal competence. First, defendant claims that there was "no serious or propper [sic] effort to disspute [sic] evidence put forth against the defendant." We disagree. Defense counsel adequately cross-examined all the state's witnesses and made timely and appropriate objections to the state's evidence.

■ Second, defendant claims that his counsel erred when he only asked for a mistrial after "witnessing the coercion [of the] main witness." We assume that defendant is referring to his claim that the prosecutor was guilty of improper coaching of the witness Morales. In fact, counsel did not request a mistrial but did request that the evidence be excluded. As we have already noted, there is no validity to the defendant's claim of witness coercion in the first instance. Nothing in the record supports defendant's claim of ineffective assistance of counsel at trial.

## CONCLUSION

The issues separately raised by the defendant and his counsel present no error. We have also reviewed the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. McGann,* 132 Ariz. 296, 645 P.2d 811 (1982). We find none. The convictions and sentences are affirmed.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.