831 P.2d 430

**STATE of Arizona, Appellee,**

v.

**Luther Franklin DOWNING, Appellant.**

**No. 1 CA–CR 90–807.**

Court of Appeals of Arizona,
Division 1, Department C.

May 5, 1992.

**432**

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Michael J. Burke, La Paz County Public Defender, Parker, for appellant.

## OPINION

ALLEN G. MINKER, Superior Court Judge.

Luther Franklin Downing appeals his convictions and sentences for possession of dangerous drugs for sale, a class 3 felony, and possession of dangerous drugs, a class 4 felony. Defendant was found guilty by a jury and subsequently sentenced to concurrent, mitigated terms of imprisonment of 3.75 years and 2 years, respectively. Timely notice of appeal was filed.

## FACTS

At approximately 9:30 p.m. on January 27, 1990, the appellant and two undercover police officers met and engaged in conversation in a Parker, Arizona bar. According to the officers, Downing asked them for marijuana. The officers said that they had some, but they told Downing that they wanted to obtain methamphetamine. Downing agreed to purchase methamphetamine for the officers in exchange for a marijuana cigarette. Over the course of the next few hours, Downing made several attempts to contact a connection, succeeding upon his third or fourth attempt.

The officers eventually gave Downing $110.00, and upon his return from his connection, he produced a baggy containing a white powdery substance. After delivering the drugs, Downing asked to "do a line" from the baggy as part of his compensation. One of the officers placed the baggy on a table and allowed the defendant to withdraw some of the white powder, which he then snorted into his nostrils. The officer retrieved the baggy, and thereafter impounded it as evidence in the case. The powder was subsequently analyzed by the Department of Public Safety crime lab and found to contain methamphetamine.

Downing was taken into custody two days later by the same undercover officers who described the drug sale. The officers initially brought the defendant to their task force office, where they attempted to convince him to work as an informant. Failing in this effort, the officers informed the appellant that he was under arrest, read him his constitutional rights, and brought him to the jail for booking. The defendant invoked his rights by requesting the assistance of an attorney.

Downing testified and denied all of the aspects of the crimes involving methamphetamine, admitting only the facts regarding his request and subsequent possession of marijuana. He also testified that the reason he refused to answer the officers' questions while at the task force office was because he thought the officers were drug dealers trying to discover if he was an informant.

The appellant's Rule 20 motion and renewed motion for a directed verdict were both denied, as was the request for a jury instruction on entrapment. After initially informing the court that they were unable to reach unanimous verdicts, the jurors deliberated further and subsequently returned guilty verdicts as to both counts.

Downing raises three issues on appeal:

1. Did the trial court err in refusing to instruct the jury on the defense of entrapment?

2. Did the trial court err in denying defendant's motion for a directed verdict as to the simple possession count?

3. Did the trial court err in denying defendant's motion for a mistrial based upon testimony regarding his post-arrest silence?

## DISCUSSION

### Entrapment Instruction

■ Appellant contends that the jury should have been allowed to consider the inconsistent defenses involved in his claim that, on the one hand, he did not participate in the crimes charged, and on the other hand, if he did, he was entrapped into participating. His argument relies upon a ruling by the United States Supreme Court when a defendant raises the entrapment defense in federal court. *See Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). However, since the filing of the briefs in this case, the Arizona Supreme Court has determined that the *Mathews* decision is not binding upon the states and is contrary to this state's body of law regarding entrapment inconsistency. *See State v. Soule*, 168 Ariz. 134, 135–137, 811 P.2d 1071, 1072–1074 (1991). Based upon this principle that the *Mathews* rule encourages perjury and jury confusion, our supreme court held that:

> When a defendant testifies that he did not commit the elements of the offense charged, the entrapment defense is not a plausible alternate legal theory of the case.... Entrapment is a proper defense under these circumstances only if the accused is lying. We do not believe that the defendant has a right to lie at trial or a right to solicit his attorney's aid in executing such a defense strategy.

*Soule*, 168 Ariz. at 137, 811 P.2d at 1074. (citations omitted).

The defendant in the instant case contradicted the testimony of the police officers with regard to the factual circumstances involving his possession of marijuana. He unequivocally denied all of the aspects of his possession and sale of methamphetamine and stated that the officers were lying in an effort to frame him. Under these circumstances, the defendant could not avail himself of the entrapment defense, and the trial court's refusal to instruct the jury on entrapment was proper.

### Motion for Directed Verdict

■ Defendant contends that the trial court should have granted his motion for a directed verdict as to his possession of a dangerous drug, because the police did not request fingerprint or drug residue analysis of the check stub allegedly used by the defendant to snort the methamphetamine. Moreover, the police did not obtain an analysis of defendant's blood or urine upon his arrest two days after his alleged sale and use of the drug. It is well-settled that the trial court's denial of a directed verdict will not be reversed unless there is a complete absence of probative facts to support the court's conclusion. *See, e.g., State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990).

The undercover police officers in this case testified that after delivering the baggy of white powder, the defendant asked to "do a line" of the substance in partial payment for his services. The defendant was observed by the officers as he withdrew some of the powder from the baggy, then rolled a check stub into a tube and snorted the powder through the tube into his nose. At trial, a chain of custody was established regarding the baggy of white powder, and a criminalist testified as to his conclusion, based upon tests he had performed, that the substance contained methamphetamine, a dangerous drug.

Defendant's argument on appeal actually challenges the circumstantial quality of the evidence, as opposed to its sufficiency, and thus, his contention does not persuade us. The substantial evidence required to overcome a motion for judgment of acquittal can be either direct or circumstantial. *See State v. Anaya*, 165 Ariz. 535, 799 P.2d 876 (App.1990). "Evidence [that is] wholly circumstantial can support differing, yet rea-

sonable inferences sufficient to defeat a motion for directed verdict." *Anaya*, 165 Ariz. at 543, 799 P.2d at 884.

Clearly, the jury could reasonably infer from the state's evidence that defendant used a dangerous drug "of such quality and quantity ... used according to the practices of users of dangerous drugs." Rudolph J. Gerber, *Recommended Arizona Jury Instructions (Criminal)* § 34.-071 at 314 (1989). Based upon the evidence presented, the trial court properly denied defendant's motions for directed verdict.

*Post–Arrest Silence*

Downing contends that the prosecutor improperly elicited testimony from the police officers regarding his post-arrest silence, and that he was entitled to a mistrial when his lawyer so moved. On redirect examination of the second undercover officer, the prosecutor asked questions regarding the length of time it took to book Downing at the jail. The prosecutor asked, "Forty-five minutes?" The officer answered, "He refused to talk to us. He was not talking to us." Thereupon defense counsel moved for a mistrial. The trial judge denied the motion for a mistrial, but offered to instruct the jury to disregard the answer. Defense counsel, concluding that such an instruction would only aggravate the situation, asked the judge not to instruct the jury. In reaching his decision, the trial judge commented to the prosecutor, "I don't understand why we keep having this problem we've had in cases you've had before."

This was not the first time the defendant's silence was called to the attention of the jury. In direct examination of the first undercover officer, the following exchange took place:

Q. Okay. Did—at the conclusion of that hour, did Luther understand clearly, do you believe, of what his options were at that point?

A. I believe he understood them, and he invoked his rights and kept his rights, and we didn't ask any other questions. He asked for his lawyer.

The incident to which the exchange referred occurred in the context of the officer attempting to recruit Downing to do undercover work for him. While the officer's calling attention to Downing's invocation of his right to counsel was not directly elicited by the prosecutor at that point, it was a short while later in the same officer's testimony:

Q. After an hour, he invoked his rights. I presume you mean his Miranda rights?

A. Right.

Q. Had he been Mirandized before that?

A. I don't think so.

Q. At the point in the conversation where he refused to become a [confidential informant], you say, "Okay. You are under arrest," and you then read his Miranda rights?

A. Right.

Q. He invoked his rights?

A. Right.

■ From the above, it appears to us that calling the attention of the jury to Downing's refusal to speak to the officers was neither inadvertent nor a single time occurrence. *Cf., e.g., State v. Correll*, 148 Ariz. 468, 715 P.2d 721 (1986). Use of an arrestee's post-arrest silence at trial has been held numerous times to constitute reversible error. *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Sorrell*, 132 Ariz. 328, 645 P.2d 1242 (1982); *State v. Bowie*, 119 Ariz. 336, 580 P.2d 1190 (1978); *State v. Sanchez*, 130 Ariz. 295, 635 P.2d 1217 (App.1981); *State v. Rios*, 122 Ariz. 33, 592 P.2d 1299 (App. 1979). The potential implication flowing from a defendant's claim of silence is that he has something to conceal, and has not been open and forthright concerning his conduct. As our courts have stated, granting a person the right to remain silent, and then penalizing a person for exercising that right, is inconsistent.

■ The state argues that defense counsel waived the matter by making no objections until finally moving for a mistrial. If

no objection had been made during the entire trial, we would then have to decide whether fundamental error had taken place in the absence of defense counsel's calling the matter to the trial judge's attention. This is not such a case, however. The fact that defense counsel, for whatever reason, did not object to the earlier mention of defendant's post-arrest silence does not grant the prosecution carte blanche to do anything it wishes. We believe the state has misconstrued the meaning of waiver. "The essential question is whether or not the objectionable matter is brought to the attention of the trial court in a manner sufficient to advise the court that the error was not waived." *State v. Briggs*, 112 Ariz. 379, 382, 542 P.2d 804, 807 (1975). Here, defense counsel did bring the matter to the attention of the trial court.

 The state also cites *State v. Robinson*, 127 Ariz. 324, 620 P.2d 703 (App.1980). The state argues that where comment on post-arrest silence merely places the conversation in context, reversal of a conviction is not required. In *Robinson*, however, the defendant chose to answer a number of questions before invoking his rights. The court found the defendant's statements to the officers highly relevant, since they contradicted his trial testimony. In contrast, we are at a loss to see any relevancy to the subject of attempting to recruit Downing as an undercover agent. There was no testimony revealing inculpatory statements. There was only a showing that the officers explained to Downing that he could become an undercover agent, and that he refused. We fail to see how this contributed to the issue of whether Downing was guilty or not of the crimes charged.

The state also cites *State v. Davis*, 119 Ariz. 529, 582 P.2d 175 (1978). There, the court found that one inadvertent answer, which the prosecutor himself asked to strike from the record, should not constitute reversible error. Here, however, the defendant's post-arrest silence was deliberately brought to the attention of the jury by direct questioning by the prosecutor.

Because the conduct which took place in this case is so clearly proscribed by the law, and because it was not inadvertent nor a single occurrence, we find the trial judge erred in denying the motion for mistrial.

### CONCLUSION

The defendant's convictions are reversed and the matter remanded for a new trial consistent with this decision.

EUBANK and KLEINSCHMIDT, JJ., concur.

NOTE: The Honorable Allen G. Minker, Judge of the Greenlee County Superior Court, was authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, section 3.