871 P.2d 1169

**STATE of Arizona, Appellee,**

v.

**Michael John Paul KEELEY, Appellant.**

**No. 1 CA–CR 93–0231.**

Court of Appeals of Arizona,
Division 1, Department E.

Feb. 24, 1994.

Reconsideration Denied April 18, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul J. Prato, Phoenix, for appellant.

OPINION

NOYES, Judge.

Michael John Paul Keeley ("Appellant") appeals from his conviction for possession of marijuana and possession of drug paraphernalia, each a class six felony with two prior felony convictions. The sole issue is whether

Appellant's motion for mistrial should have been granted after the deputy county attorney elicited testimony from the arresting officer that Appellant invoked his right to remain silent when asked a post-arrest question he did not want to answer. We conclude that the State deliberately created constitutional error and that a new trial is warranted.

## I.

On December 27, 1991, Officer David Sphar of the Phoenix Police Department received a tip that Appellant was visiting a certain residence in Phoenix and that there was a warrant for his arrest. After confirming the existence of a felony arrest warrant for Appellant, the officer drove to the address given. As the officer drove by the house, he saw through the open front door that there were several people inside. He also saw, parked outside the house, a car that fit the description he had for Appellant's car.

The officer parked down the street and walked back and hid behind a bush near the front stoop of the house. The officer heard someone inside the house ask "Michael" if he would like to get some beer. A voice responded that he did not want to go get beer, he wanted to go outside and play football. Four young men then came out and began to play or stand around in the front yard, unaware of the officer's presence. None of these people matched the description of Appellant. As it turned out, there was one person named Michael in the yard, and another one in the house.

As a backup officer arrived in a marked police car, one of the people in the front yard shouted that the police were coming. Hearing this announcement as a warning to those in the house, Officer Sphar stepped onto the front stoop and looked into the house through the screen door. The officer then saw Appellant, the only person in the room, stooped over a coffee table scraping a green leafy substance towards himself. The officer also saw a small metal pipe and a small container on the table. The officer entered and arrested Appellant.

The State's witnesses were the arresting officer, the backup officer, and the forensic chemist who identified the seized substance as one and a half grams of marijuana. Appellant testified on his own behalf and denied possessing the marijuana or the paraphernalia. In rebuttal, the State called the woman who lived in the house. She had seen the substance on the coffee table but could not say whose it was.

The jury found Appellant guilty on both counts. The court sentenced Appellant to maximum, concurrent, prison terms of four and a half years on each count, with fines and assessments as mandated by law. A notice of appeal was timely filed. We have jurisdiction pursuant to A.R.S. sections 12–120.-21(A)(1) (1992), 13–4031 (1989), and 13–4033(A) (Supp.1993).

## II.

■ During the prosecutor's direct examination of Officer Sphar, the following exchange occurred, after previous questioning had established that Appellant had been arrested and was answering questions after receiving the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):

Q. And did you have any further conversation with Mr. Keeley?

A. Yes, I did.

Q. And what was that?

A. I then asked what it was about the approach of a Phoenix police officer that would have required him to bend down and begin scooping marijuana up.

Q. And what did he say in answer to that?

A. He said he'd like to talk to a lawyer and didn't want to ask [sic] any more questions.

DEFENSE COUNSEL: Objection at this time.

THE PROSECUTOR: So that at that—I'm sorry?

THE COURT: Sustained.

THE PROSECUTOR: Officer, at that point, did Mr. Keeley and you stop talking about these items?

A. We did.

The next morning, defense counsel made a motion for mistrial, which the trial court took under advisement and later denied. In response to the motion, the prosecutor made this argument:

> Your Honor, that was immediately stricken. He slipped. He knows better than that, and he—it was immediately stricken. The Court made the necessary instruction at the time, and then we went on, and I think first the objection was waived, but even if it were not, I don't see that it was so serious that it was not immediately cured by the Court's handling of the matter right at that time.

There are some factual inaccuracies in this argument. The question and answer were never ordered stricken, the jury was never given an instruction on the issue, the objection was made, not waived, and the assertion that the officer "slipped" is invalidated by the officer's report and the prosecutor's opening statement.

Officer Sphar's departmental report contains a close paraphrase of the question asked and the answer given, as follows: "Suspect invoked his rights to a lawyer when I asked what about the arrival of police officers made it necessary to handle the marijuana on the coffee table." The report was referred to at trial and it had been referred to by the officer while testifying during a pre-trial hearing. In light of the report, when the prosecutor asked the officer, "And what did he say in answer to that?", she asked for exactly what the officer provided: an improper comment on Appellant's exercise of his right to remain silent. The prosecutor made the same improper comment in her opening statement:

> [Appellant] talked to the officer about the drugs. He talked to the officer about the items of paraphernalia. But when the officer asked him a question he didn't like, he stopped talking.
>
> Now, nobody has to talk to a police officer, but it's significant that he talked and had an explanation just like that for everything until he didn't like the— (whereupon counsel snapped her fingers)— and then he stopped.

The conclusion we draw from this record is that the comments about Appellant's post-*Miranda* silence were a deliberate trial strategy by the prosecutor, not an inadvertent slip by the officer.

### III.

*Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) holds that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." The Supreme Court has recently reiterated that the *Doyle* rule "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1716, 123 L.Ed.2d 353 (1993) (quoting *Wainwright v. Greenfield,* 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623 (1986)). The error in this case was more than an effort to impeach an explanation offered at trial; the jury was advised by the State in opening statement that Appellant's invocation of his right to remain silent was "significant" evidence of Appellant's guilty state of mind.

■ The State argues that any error was harmless beyond a reasonable doubt. Although the harmless error analysis does apply to *Doyle* error, *State v. Anderson,* 110 Ariz. 238, 241, 517 P.2d 508, 511 (1973), appellate courts are reluctant to find the error harmless "when it appears that the error was deliberate and willful," *State v. Sorrell,* 132 Ariz. 328, 330, 645 P.2d 1242, 1244 (1982). In *Sorrell,* the prosecutor elicited improper tes-

timony from an officer regarding the defendant's post-arrest silence, and the prosecutor referred to this testimony in opening statement and closing argument. *Id.* at 329, 645 P.2d at 1243. Our supreme court found that, although the officer's comment may have been inadvertent, the prosecutor's comments were "deliberate and not inadvertent." *Id.* at 330, 645 P.2d at 1244. The court also stated:

Nine years ago, in a case also involving post-arrest silence, this court warned prosecutors very clearly about "approaching the precipice of fundamental error" while relying on the harmless error doctrine. *State v. Anderson,* [110 Ariz. at 241, 517 P.2d at 511]. Four years ago, in another case involving failure to speak when arrested, we said, finding no reversible error: "*In the future,* the state should scrupulously avoid any indication that the accused kept silent after arrest." *State v. Bowie,* [119 Ariz. 336, 341, 580 P.2d 1190, 1195 (1978)]. (Emphasis added) In this case, the State has approached the precipice of reversible error once too often.

*Id.* Similar pronouncements have been made in *State v. Salcido,* 140 Ariz. 342, 345, 681 P.2d 925, 928 (App.1984) (Division Two), and *State v. Downing,* 171 Ariz. 431, 434–35, 831 P.2d 430, 433–34 (App.1992) (Division One).

We find in the case before us today the same kind of error that warranted reversal in *Sorrell, Salcido,* and *Downing.* To find this deliberate error harmless would just encourage similar constitutional error in the future, something we decline to do, particularly in a case where the verdict turns on the jury's resolution of a credibility contest between the arresting officer and the defendant.

[5] The State also argues that Appellant himself "obviated any potential prejudice" because, during his own testimony (while being cross-examined by the prosecutor), he spoke about when and why he invoked his right to remain silent. This is a novel proposition—that the State, having deliberately created constitutional error during its case-in-chief, somehow renders that error harmless by cross-examining the defendant on the same subject. Although we can see from the

record that the prosecutor's cross-examination of Appellant was in response to questions his counsel asked the backup officer regarding the meaning of the *Miranda* warnings, the fact that Appellant's counsel asked some questions about this subject does not excuse the previous deliberate error by the prosecution. We do not agree that the State can commit deliberate constitutional error, then save the conviction by arguing that the error became harmless when Appellant's counsel asked a few questions to try to minimize the damage.

As this Court stated not long ago in another case involving a deliberate *Doyle* violation and a subsequent motion for mistrial:

Because the [prosecutorial] conduct which took place in this case is so clearly proscribed by the law, and because it was not inadvertent nor a single occurrence, we find the trial judge erred in denying the motion for mistrial.

*Downing,* 171 Ariz. at 435, 831 P.2d at 434.

The judgment and conviction are reversed and the matter is remanded for a new trial.

JACOBSON, P.J., and FIDEL, J., concur.