NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ADRIAN ISRAEL ZAVALA, *Appellant.*

No. 1 CA-CR 21-0577
FILED 1-03-2023

Appeal from the Superior Court in Maricopa County
No.  CR2021-001132-001
The Honorable Scott Sebastian Minder, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Diane Leigh Hunt
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass joined.

---

**T H U M M A**, Judge:

¶1　　　　Defendant Adrian Israel Zavala appeals from his convictions for possession or use of dangerous drugs and possession of drug paraphernalia and his resulting probation grants. Because Zavala has shown no reversible error, this court affirms.

### FACTS AND PROCEDURAL HISTORY

¶2　　　　One early morning in July 2018, Mesa police stopped a car for a cracked windshield. The officers checked for outstanding warrants for the driver and Zavala, who was sitting in the passenger seat, and found Zavala had a warrant issued by Tempe City Court. The officers arrested Zavala on the warrant, placed him in a patrol car and advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). While performing a search incident to arrest, the officers found a digital scale in Zavala's pocket with a "white flaky residue" on it. The driver consented to a search of the car, which revealed a yellow bag containing a "white crystal-like substance" inside the door compartment by the passenger seat inches away from where Zavala had been sitting.

¶3　　　　Zavala was charged with one count of possession or use of dangerous drugs, a Class 4 felony, and possession of drug paraphernalia, a Class 6 felony. Zavala waived his right to a jury trial. At the bench trial, a forensic scientist testified that her testing of the residue on the scale and the substance in the yellow bag revealed that both contained methamphetamine. The arresting officer also testified. During direct examination, the prosecutor asked the officer to "tell us how that investigation developed." After summarizing the information listed above, the officer volunteered the following, using a mix of present and past tense in his answer:

> I take [the yellow bag] out of the door and I set
> it on the passenger's seat and I continue to
> search that area to make sure I didn't miss

anything, to which I later put [it] back in my patrol vehicle and attempted to interview Adrian Zavala at a later time, while he was still in that vehicle before we extradited him. Read his Miranda Rights; he understood by saying yes, that he did not waive his rights and he requested an attorney, so I did not make any attempt to interview him further about the drugs.

¶4    After the State rested, Zavala moved for a judgment of acquittal, which the court denied. Zavala then elected to testify. During Zavala's direct examination, the following exchange took place:

Q. Now, the officer searched the vehicle at one point and they stated he found the small baggie, which is in evidence here of some dangerous drugs. Was this your drugs?

A. At this point -- no. No. I knew nothing -- he didn't even tell me -- he just said, You're gonna -- want to talk about what I found, is what he said, I believe. At that point, was I already Mirandaed. When I was taken from the vehicle, with the warrant, telling me there's a warrant recall, he goes -- he went ahead and Mirandaed me, and I invoked. I said, Okay, well, this is kind of getting kind of dicey here. I invoke the fifth amendment 'cause I kind of felt like there was going to be some kind of impropriety in my mind, 'cause the way they followed us off to the -- off the res into Mesa.

. . . .

But with that, I don't know whether he was satisfied with that or not. Like I said, I was Mirandaed and I invoked. I was like, Okay, well, I kind of felt a little bit under -- under threat at that point. And so I -- you know, I was taken to the back of the cruiser, and it wasn't until -- I can't remember which officer -- but three times the officer came back and I guess

you could say prodded me about what he found, and he never told me what it was.

On cross-examination, the prosecutor asked Zavala about his interaction with the officers.

Q. All right. You mentioned that you did invoke your right, your fifth amendment right, not to incriminate, correct? Not to speak to an officer without a lawyer present?

A. Yes. After I was Mirandaed, yeah.

Q. Okay. And the officers never came back and talked to you after that, did they?

A. No. They did. I was -- I had an officer -- like I said, I can't remember which one it was, but he came back three times while I was handcuffed and detained in the back of the cruiser, prodding me. Comes to find out -- we're going to talk about this; you're going to tell me what I found. And then I believe there was a -- some argument between the two officers that said -- finally I had to say, Leave me alone. I invoked. And I kind of got upset the last time, and my witness statement to -- what the officer said, Well, he's got the right to shut the f--- up.

. . . .

But the officer that was in the video, was, I believe, the one that was prodding me, the one that kept on coming back to the cruiser, saying, You're going to tell me about what I found and all this. And I'm like, I've already been Mirandaed; I invoked; and yeah, that was -- that was well after, you know, that point too. I had been Mirandaed and I invoked. It wasn't until maybe seemed like a half hour later, like, he came in asking me all these questions, and that's when I was kind of afraid right there.

4

¶5     In initial closing argument, the prosecutor stated

> [Zavala] claims the involvement of these other people, but he chose not to bring them here, which is not a comment on silence, rather it's a comment on the weakness of his own case. He chose to present a case here today, but he did not call witnesses that could reasonably be expected to support what he's told us here. So he has a very low credibility. He's talked about commentary made to him by police officers, to the affect of, his warrant has been recalled. He talked about being prodded for more information, even after he had invoked his rights. None of that is credible. It's not supported by the video evidence. It's flatly contradicted by Officer Echols, and there's no reason to believe that these additional conversations actually happened.

At no point during trial was there any objection to the officer's testimony or the prosecutor's argument, nor was there any motion to strike or request for a mistrial.

¶6     At the close of trial, after stating it had considered "all the evidence that was presented and arguments," the court found Zavala guilty on both counts. The court then suspended Zavala's sentences and placed him on supervised probation for nine months. This court has jurisdiction over Zavala's timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A) (2022).[1]

## DISCUSSION

¶7     Zavala argues that the State's use of his post-invoking silence as substantive evidence of guilt or for impeachment violates his due process rights and is fundamental error resulting in prejudice, requiring reversal of his convictions. The admission of unobjected-to evidence is subject to fundamental error review. *State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018). An error is fundamental if it "goes to the foundation of the defendant's case,

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

takes away a right essential to the defense, or is of such magnitude that it denied the defendant a fair trial." *Id.* at 138 ¶ 1. Zavala must also show it was prejudicial. *Id.* at 142 ¶ 21.

**¶8**        The State cannot use a criminal defendant's invoking of his right to remain silent for impeachment or substantive evidence of guilt. *See, e.g., Doyle v. Ohio*, 426 U.S. 610, 618 (1976); *State v. Sorrell*, 132 Ariz. 328, 330 (1982); *State v. Bowie*, 119 Ariz. 336, 341 (1978); *State v. Palenkas*, 188 Ariz. 201, 212 (App. 1996). Thus, the admission of evidence about Zavala's invoking his right to remain silent, and related argument, was error. *See, e.g., Escalante*, 245 Ariz. at 141 ¶ 19; *State v. Carrillo*, 156 Ariz. 125, 131–32 (1988); *Sorrell*, 132 Ariz. at 329. This point is particularly true here because the State's witness was the first to testify about Zavala invoking. And as the Arizona Supreme Court held in *State v. Keeley*, a defendant does not obviate any error by also commenting on his invoking after the State first raises the issue. 178 Ariz. 233, 236 (App. 1994).

**¶9**        Although the State argues that referencing a defendant's invoking is fundamental error only if used as substantive evidence of guilt, the cases cited by the State do not apply here. *See Carrillo*, 156 Ariz. at 131–32 (holding State could introduce evidence of a defendant's invoking to determine whether defendant understood the right to remain silent in determining voluntariness); *State v. Stevens*, 228 Ariz. 411, 417 ¶ 16 (App. 2012) (holding court erred in allowing the State to admit evidence of defendant invoking her Fourth Amendment rights and arguing she did so to prevent police from finding illegal drugs in her home); *State v. Allen*, 253 Ariz. 306, 329–30 ¶¶ 34-39 (2022) (finding statements made by a detective during an interrogation were not offered for the truth of the matter asserted and therefore were not hearsay and not testimonial under the Confrontation Clause of the Sixth Amendment of the U.S. Constitution).

**¶10**        Recognizing the error, and for purposes of this discussion presuming it was fundamental, to cause reversal, Zavala must show resulting prejudice. *Escalante*, 245 Ariz. at 142 ¶ 21. To do so, Zavala must show that, without the error, "a reasonable [fact finder] . . . *could have* reached a different [verdict]." *Id.* at 144 ¶ 29 (quoting *State v. Henderson*, 210 Ariz. 561, 569 ¶ 27 (2005)). "[T]he amount of error-free evidence supporting a guilty verdict is pertinent" to deciding whether a reasonable fact finder could have reached a different result. *Escalante*, 245 Ariz. at 144 ¶ 34.

**¶11**        Zavala does not challenge the sufficiency of the evidence, which properly supports the guilty verdicts. Zavala has not shown how the introduction of his invoking contradicts or negates evidence of his guilt.

Moreover, Zavala's arguments do not account for the fact that the trial was to the court, not to a jury. "[J]udges 'are presumed to know the law and to apply it in making their decision.'" *State v. Lee*, 189 Ariz. 608, 616 (1997) (citation omitted). As this court noted long ago,

> An appellate court will not reverse a case tried to the trial court without a jury for errors in receiving improper matters into evidence provided there is sufficient competent evidence to sustain the judgment. The fact a trial judge allows such improper evidence to be offered and received will not require a reversal for the appellate court will assume, unless it affirmatively appears to the contrary, that the trial judge only considered the competent evidence in arriving at the final judgment.

*State v. Warren*, 124 Ariz. 396, 402 (App. 1979). Contrary to Zavala's argument, the trial court's statement that it considered "all the evidence that was presented and arguments," does not constitute an affirmative statement that it relied on his invoking when it found Zavala guilty. Indeed, there is no suggestion that the court, as finder of fact, improperly relied on evidence and argument that Zavala invoked his right to remain silent.

¶12 Zavala argues "[t]his was a weak case that turned on" his credibility. The trial record is to the contrary. Zavala was found with a scale in his pocket, that had a visible "white flaky residue" that testing confirmed was methamphetamine and that the forensic scientist testified was commonly used as drug paraphernalia. This "error-free" evidence, which had nothing to do with Zavala invoking, properly supports his paraphernalia conviction. *See Escalante*, 245 Ariz. at 144 ¶ 34; A.R.S. § 13-3415(A) (prohibiting possession of drug paraphernalia); A.R.S. § 13-3415(F)(2)(e) (definition of drug paraphernalia includes "[s]cales and balances used, intended for use or designated for use in weighing or measuring drugs.").

¶13 Similarly, arresting officers found a small bag containing a "white crystal-like substance," that testing confirmed was methamphetamine, in the passenger-door compartment inches away from where Zavala had been sitting. That "error-free" evidence, coupled with Zavala having a scale with methamphetamine residue in his pocket, properly supports his conviction for possession or use of dangerous drugs. *See Escalante*, 245 Ariz. at 144 ¶ 34; A.R.S. § 13-3407 (prohibiting, among

other things, possession of dangerous drugs); *see also State v. Gill*, 248 Ariz. 274, 277 ¶ 7 (App. 2020) ("'Possession' means a person 'knowingly exercised dominion or control over property,' and it may be actual or constructive") (citations omitted); *State v. Villavicencio*, 108 Ariz. 518, 520 (1972) (noting fact finder may find constructive possession where substance is "found in a place under [the defendant's] dominion and control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the narcotics. Exclusive control of the place in which the narcotics are found is not necessary.").

## CONCLUSION

**¶14**　　On this record, and given this was a bench trial, Zavala has not shown the error in admission of evidence, and resulting argument, of his invoking was prejudicial. Thus, Zavala's convictions and probation grants are affirmed.

